*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. O. R. DISHNER, Minor.

UNPUBLISHED
April 30, 2019

No. 345397
Wayne Circuit Court
Family Division
LC No. 17-001118-NA

Before: MURRAY, C.J., and SAWYER and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating her parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody),[1] and (j) (reasonable likelihood of harm if returned to parent). We affirm.

The child was born in May 2017, tested positive for opiates and benzodiazepine at the time of his birth, and suffered from symptoms of withdrawal for seven weeks. In July 2017, the Department of Health and Human Services (DHHS) filed a petition requesting the court to take jurisdiction over the child. The petition alleged neglect and asserted the reasons for removal were "substance abuse, abandonment, and physical abuse." The petition stated that it was contrary to the child's welfare to remain in the care of respondent because the child tested positive for opiates and benzodiazepine at the time of his birth, respondent admitted that she had been addicted to heroin for 10 years and used heroin twice daily during her pregnancy, and the child had been hospitalized since his birth because of the drug exposure. Further, the petition alleged that respondent had not received prenatal care during her pregnancy.

---

[1] MCL 712A.19b(3)(g) was amended effective June 12, 2018, before respondent's parental rights were terminated. See 2018 PA 58. It is not clear from the record which version of the statute the trial court relied on in terminating respondent's parental rights. However, since other statutory grounds were established, any error that may have occurred in relying on the former version of the statute is harmless.

-1-

After a preliminary hearing on the matter, the trial court authorized the petition and ordered that the child go directly into foster care placement immediately upon release from the hospital. At that time, respondent was legally married to a man living in Kentucky who was deemed to be the child's legal father. However, B. Dishner asserted that he was the child's biological father, sought to establish paternity, and wanted to become the child's legal father. Dishner petitioned the court to establish paternity and provided the results from a DNA test. The trial court granted the petition and made Dishner the legal father of the child at a hearing on August 9, 2017. After the same hearing, the trial court issued an order regarding both parents stating that after admission of pleas, and by a preponderance of the evidence, there were statutory grounds to exercise jurisdiction over the child, make the child a temporary ward of the court, and asked that a treatment plan be provided to each of the parents. The trial court also granted supervised visitation to respondent and Dishner.

DHHS provided both respondent and Dishner with case service plans. Dishner complied with all aspects of his case service plan and progressed to unsupervised visitation, then overnight visits, and ultimately, the trial court placed the child with Dishner in December 2017. Respondent did not comply with her court-ordered case service plan, which included: parenting classes, psychological and psychiatric evaluation, individual therapy, substance abuse assessment and recommended treatment, weekly random drug screens, obtaining and maintaining suitable income and housing, remaining in regular contact with the foster care worker, attending all court hearings, and visiting with the child on, at least, a weekly basis.

In March 2018, the trial court held a dispositional review, permanency planning hearing. The caseworker testified that DHHS had no concerns about the care of the child while placed with Dishner, and DHHS requested that the court dismiss the child's wardship. During the hearing, respondent called in and on speakerphone stated, "I'll sign custody to [Dishner] because that's where my child needs to be but nobody has contacted me for anything. I want [the child] with [Dishner] because he's a great father and he deserves him but I want to be able to see my son. That's all I want. I will sign custody over to [Dishner.] He deserves him. Contact me for that. Good bye." The caseworker reported that respondent had not visited the child in the last reporting period and had not participated in any aspect of her case service plan. After the hearing, the trial court stated it was concerned because respondent had not visited the child, respondent had not come forward to participate in the services offered toward the goal of reunification, respondent had not participated in the last few court hearings, and that respondent "had no interest as far as being a parent to this child." For those reasons, the trial court ordered the filing of a permanent custody petition.

In April 2018, DHHS filed a supplemental petition for permanent custody requesting that the trial court terminate respondent's parental rights to the child. The supplemental petition stated that respondent has been inconsistent and noncompliant in adhering to her case service plan provisions including: only attending 8 of 41 scheduled parenting time visits, never providing documentation of suitable housing, not allowing a home assessment, failing to provide documentation of a legal income, not making herself available for an income assessment, refusing all offers of employment assistance, not attending any court hearings except one via phone but hung up prior to the end of the hearing, failing to comply with any of the court's recommendations, and failing to maintain contact with her caseworker despite phone calls and text messages from the worker to respondent. The supplemental petition also stated that, despite

-2-

referrals for service, respondent failed to obtain a psychological assessment, failed to participate in parenting classes, failed to participate in substance abuse treatment, missed 33 of 33 requested drug screens, and failed to remain drug and alcohol free. The supplemental petition stated that, on September 19, 2017, respondent was administered a drug screen and she tested positive for cocaine, Benzoylecgonine, Ecgonine Methyl Ester, Fentanyl, and Nor Fentanyl. The supplemental petition also stated that on March 27, 2018, respondent refused to provide a drug screen.

The supplemental petition requested the trial court to find that the child was without proper care and custody and terminate the parental rights of respondent pursuant to MCL 712A.19(b)(3)(c)(*i*), (g), and (j). The supplemental petition also requested that the court make a finding that termination of parental rights was in the child's best interests and order that additional efforts for reunification of the child with the parent not be made pursuant to MCL 712A.19b(5). On June 15, 2018, the court held a bench trial on the supplemental petition for permanent custody. At the conclusion of the trial, the court found by clear and convincing evidence that the parental rights of respondent be terminated. The trial court further found by a preponderance of the evidence, that it was in the best interests of the child that the parental rights of the mother be terminated. Respondent now appeals as of right.

Respondent first argues that because the child was placed with his father, the trial court had no reason to terminate her parental rights and should have instead considered lesser alternatives, namely, a custody arrangement. Respondent did not object on constitutional grounds in the trial court and raises this issue for the first time on appeal. Therefore, this issue has not been preserved. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). "However, because the issue presented is an unpreserved claim of constitutional error, this Court will review for plain error affecting substantial rights." *Id*.

Parents have a fundamental right to "make decisions concerning the care, custody, and control of their children." *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). This right is not absolute, however. *Id*. The "state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some circumstances neglectful parents may be separated from their children." *Id*. at 409-410 (quotation marks and citation omitted). "Once the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established under [MCL 712A.]19b(3), the liberty interest of the parent no longer includes the right to custody and control of the children." *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000).

When making its findings, the trial court expressly noted that the child was placed with his father, who had completed every part of his case service plan. All parties and the trial court were well-aware that Dishner was competently caring for the child. At the hearing on March 21, 2018, respondent called in via speakerphone and essentially admitted that she only wanted to be able to visit her son, and did not verbally indicate a willingness to do more for him, or engage in services. When she suggested that the child should be placed solely in his father's care, respondent effectively conceded that she was not willing or able to care for him.

With regard to visitation, record evidence reflects that respondent visited the child when Dishner drove her to the visits shortly after the child was taken into custody. When Dishner and

respondent indicated that they were no longer planning together for the child, respondent failed to regularly visit the child. While weekly supervised visitation was offered to her, the record reflects that between September 2017 and March 2018, respondent visited the child only four times in November 2017 and once in March 2018 but left the visit early. While respondent was appropriate with the child, respondent failed to create a bond with the child.

Respondent also never overcame her significant substance abuse problems. She did not take advantage of any of the services offered to her, did not have housing or income to support the child, did not participate in court proceedings, and showed no improvement at all in the months after the child was born. Given respondent's stated desire that the child remain with Dishner, as well as respondent's complete failure to comply with her case service plan including never overcoming her serious substance abuse issues, a less restrictive option was not feasible. Under these circumstances, we conclude that respondent's interest in the companionship, care, and custody of the child must give way to DHHS's interest in protecting the child. *In re Trejo Minors*, 462 Mich at 355. Therefore, notwithstanding the child's placement with his father, the trial court did not clearly err when it terminated respondent's parental rights.

Next, respondent contends that the trial court lacked the authority to terminate her parental rights because the plain language of MCL 712A.19b(1) bars a termination hearing when the child is living with a parent. While unpreserved, this Court may exercise its discretion to review this issue because it "involves a question of law and the facts necessary for its resolution have been presented[.]" *In re Medina*, 317 Mich App 219, 228; 894 NW2d 653 (2016) (quotation omitted).

Respondent specifically argues that, in *In re Marin*, 198 Mich App 560, 568; 499 NW2d 400 (1993), this Court chose to ignore the plain language of MCL 712A.19b(1) and affirmed the termination of the father's parental rights even though the child was neither in foster care nor in the custody of a guardian and the termination was not filed at the initial dispositional hearing. Respondent urges this Court to convene a special panel pursuant to MCR 7.215(J)(3) to overrule *In re Marin* and restore the plain language of the statute. In response, petitioner asserts that this Court addressed a similar argument in *In re Medina*, 317 Mich App at 233-235, and found that the reasoning in *In re Marin* remained sound, and, therefore, the trial court properly terminated respondent's rights under MCL 712A.19b(3) even though the child was living with his father and the termination was not filed at the initial dispositional hearing. Petitioner points out that this Court already decided the identical issue in *In re Medina*.

This Court is bound, by the doctrine of stare decisis, by the rule of law established in opinions published by the Court of Appeals on or after November 1, 1990. *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004); MCR 7.215(C)(2). In *In re Medina*, an opinion published after November 1, 1990, this Court addressed the identical issue raised by respondent in this matter and found the reasoning of *In re Marin* legally sound. Thus, we are bound to follow *In re Medina*. *Id*. Therefore, respondent's argument that the trial court did not have authority to terminate her rights under MCL 712A.19b(1), because the child was with his father, not in foster care, and the termination was not filed at the initial dispositional hearing, does not have merit.

In a reply brief, respondent, citing MCL 712A.19b(4), attempts to draw a distinction between the facts of *In re Medina* and the facts of the instant case because in *In re Medina*, DHHS sought termination at the initial dispositional hearing but here DHHS filed a supplemental petition to terminate respondent's parental rights. While that is true, it is a distinction without consequence. The interpretation of MCL 712A.19b(1) adopted by *In re Marin* and affirmed in *In re Medina* states that MCL 712A.19b(1) " 'impose[s] an obligation upon the probate court to conduct a termination hearing upon request by a party where a child remains in foster care' " in order to avoid " 'delays in the permanent placement of a child in foster care[.]' " *In re Medina*, 317 Mich App at 231-232 quoting *In re Marin* 198 Mich App at 564, 568. The *Medina* Court also held that, based on its interpretation of MCL 712A.19b(1), and the fact that "unlike §19b(1), §19b(4) does not mention foster care or guardianship[,]" MCL 712A.19b(4) simply "empowers trial courts to entertain a termination petition at the initial dispositional hearing regardless of whether the minor child is placed in foster care or with a guardian" in cases where the goal is termination not reunification. *In re Medina*, 317 Mich App at 234-235. Here, the initial goal was reunification not termination and, therefore, the MCL 712A.19b(4) exception respondent references is irrelevant in this case.

Next, respondent argues that the trial court erred when it terminated respondent's parental rights because DHHS failed to make reasonable efforts to reunify respondent and the child. This Court reviews for clear error a trial court's finding regarding whether reunification efforts were reasonable. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). A finding is clearly erroneous where the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Terry*, 240 Mich App 14, 22; 610 NW2d 563 (2000). When reviewing the trial court's findings of fact, this Court defers to the special opportunity of the trial court to judge the credibility of the witnesses. *In re Fried*, 266 Mich App at 541.

DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). Accordingly, DHHS must devise a case service plan that describes how DHHS and the parent will work to rectify the barriers to reunification. *Id*. at 85-86.

Respondent alleges that DHHS failed to provide her with adequate services in light of her problems securing transportation to participate in services. Respondent contends that she lacked access to transportation, which was a significant barrier to engaging in substance abuse treatment, visiting the child, and participating in court proceedings. The record reveals that in order to remedy the transportation issue the caseworker gave respondent bus tickets and gas cards. Respondent does not dispute that the caseworker offered her bus tickets, but alleges that she had anxiety about taking public transportation. It was unknown if respondent had access to a car to use the gas cards, but the record reflects that a friend did drop her off at four visits with the child in November 2017.

Respondent also contends that DHHS was aware of her anxiety and also learned at trial that she had a history of bipolar disorder, yet DHHS did not ensure that she participated in a psychological examination. But the record reveals that respondent had been referred for a psychological examination yet she never participated in the evaluation. It is true that caseworkers testified that respondent stated she suffered from anxiety but only in the context of being anxious about using public transportation. And the record displays that the bipolar

-5-

disorder was not revealed until the termination hearing when Dishner testified that respondent had a history of bipolar disorder. The trial court ordered that respondent receive a psychological evaluation, and respondent received a referral from the caseworker for a psychological evaluation, and even though the case proceedings lasted over a year and a half, respondent still failed to submit to the evaluation and begin counseling if necessary to assist with any psychological issues.

Respondent also contends that DHHS never verified her housing, even though caseworkers had an address for her, and never assisted her with securing valid identification. The record reveals that it was very difficult for caseworkers to reach respondent. In fact, caseworkers, respondent's own attorney, and the court had difficulty reaching respondent. Respondent failed to participate in court proceedings in person and participated via speakerphone on only a few occasions. The court had to use three types of service to make respondent aware of the termination hearing yet respondent still did not show up. From the inception of the case to the termination hearing, respondent was nonresponsive and refused to participate in the process. While DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondent[] to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Respondent was offered various services, but she never participated in any of the services offered, and did not complete even the mandated substance abuse evaluation and treatment requirements of her case service plan. Respondent only participated in two drug screens over the course of the proceedings and both were positive for drugs. Respondent was aware that missed screens counted as positive. Respondent has a significant substance abuse problem that persists yet she was not motivated to combat her substance abuse. Services referred to respondent were specifically targeted to address the primary basis for the adjudication in this matter—her ten-year history of substance abuse—but respondent chose not to participate in them at all. Consequently, the trial court did not clearly err by finding insufficient compliance with and no benefit from the services provided by DHHS, necessitating the termination of respondent's parental rights.

Finally, respondent argues that termination of her parental rights was not in the child's best interests under MCL 712A.19b(5). MCL 712A.19b(5) provides:

> If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider . . . the parent's compliance with

his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

The trial court did not clearly err by determining that termination of respondent's parental rights was in the best interests of the child. The minor child was born with drugs in his system and suffered for weeks in the hospital with withdrawal symptoms. He was in foster care for months before Dishner successfully completed his service plan and the child was placed in his father's care. The child was doing well in his placement with his father. During this time, respondent made no progress in addressing her significant substance abuse issues and did not participate at all in her case service plan. Respondent was not motivated to work on her barriers to parenting the child. Respondent showed no desire to parent the child and never created a bond with him. The evidence showed that it was unlikely that the child could be safely placed with respondent within the foreseeable future, if at all. In fact, respondent conceded that the child should be placed with Dishner. The child required a permanent, safe, and stable home, which respondent was not capable of providing. Hence, the trial court did not clearly err by determining that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ James Robert Redford

-7-