*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* G. BUTCHER, Minor.

UNPUBLISHED
May 7, 2020

No.  350439
Shiawassee Circuit Court
Family Division
LC No.  15-013672-NA

Before:  O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating her parental rights to her minor child under MCL 712A.19b(a)(*ii*) (deserted the child for more than 91 days), (3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if returned to parent).  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent shared joint physical and legal custody of her child with the child's father under an October 2012 judgment of support that had been obtained by the Saginaw County prosecutor on behalf of respondent.  On October 10, 2017, petitioner, the Department of Health and Human Services (the DHHS), filed a petition requesting the court to take jurisdiction over the child.  The petition alleged neglect, and asserted that respondent had a history of unstable housing and was living in a flea-infested home with five other people who were abusing drugs; that respondent had dropped the child off with the child's paternal aunt at the beginning of the school year; that respondent had been hospitalized on October 1 and October 3, 2017, and tested positive upon her admission for amphetamines, benzodiazepines, THC, and barbiturates; and that respondent's chronic drug use caused respondent to sleep all day.  The petition stated that it was contrary to the child's welfare to remain in the care of respondent because of "chronic drug use, continued unstable housing/homelessness, and physical neglect."  The petition did not involve any allegations against the child's father.

-1-

After a preliminary hearing, the trial court authorized the petition and the child was placed in the father's care under the supervision of the DHHS.[1]  Respondent failed to appear at the adjudication and initial disposition hearing on January 16, 2018.  After the hearing, the trial court found by a preponderance of the evidence the existence of statutory grounds to exercise jurisdiction over the child and make the child a temporary ward of the court.  The trial court requested that a treatment plan be provided to respondent.  The trial court also authorized the DHHS to exercise its discretion to provide respondent supervised or unsupervised visitation.

The DHHS provided respondent with a case service plan that included obtaining and maintaining employment, submitting to and following the recommendations of a substance abuse assessment and treatment, submitting to random drug screens and refraining from the use of illicit substances, and remaining in regular contact with the DHHS.  In April 2018, the trial court held a dispositional review/permanency planning hearing.  The caseworker testified that respondent did not initially comply with her case service plan, but was beginning to come into compliance.  Respondent was having supervised visitation at the department once weekly and the interactions were positive.  Respondent had obtained housing and seasonal employment, but had not provided written documentation of her employment.  She had a substance abuse assessment, but stated during the assessment that she did not have a substance abuse issue and did not feel that she needed treatment.  She had enrolled in outpatient substance abuse classes through Catholic Charities and acknowledged that she was using substances.  Respondent tested positive for amphetamines, methamphetamines, and THC[2] on five screening dates between November 29, 2017 and March 28, 2018.  After the hearing, the trial court stated that it was concerned about respondent's delay in participating in services.  The court warned respondent that she needed to comply and make progress in her case service plan.  The court continued the child as a temporary ward of the court and gave DHHS discretion to expand respondent's parenting time in quantity and nature.

At a dispositional review/permanency planning hearing on July 30, 2018, DHHS requested a goal change from reunification to termination of respondent's parental rights.  The caseworker testified that respondent had missed parenting times.  Respondent's drug screens since the date of the last hearing were negative,[3] but respondent was not compliant with random drug screens.  The caseworker also testified that respondent's visitation had been expanded to include two hours weekly of supervised visitation in the community, but the visitation was reduced back to one hour of weekly supervised visitation at the department after one of respondent's ex-boyfriends, whom

---

[1] The DHHS initially determined that the child would stay with the father's sister and her family during the week and would stay with the father on the weekend because of the father's work schedule and the need to get the child back and forth to school and to her visitation with respondent.

[2] Respondent indicated that she had a medical marijuana card.

[3] The DHHS court report for the reporting period indicated that respondent tested positive for THC and Tramadol on April 16, 2018, and for THC on May 31, 2018.  Given the caseworker's testimony that respondent's drug screens had been negative since the last reporting period, it appears that these positive results may not have been considered by the caseworker as positive drug screens because respondent had a medical marijuana card and because the Tramadol was a prescribed medication.

respondent had been told to avoid, confronted her, and began an argument with her in the child's presence. Respondent also told the caseworker's supervisor and the parenting time supervisor that she had "a hit ordered on her from a drug dealer." The caseworker testified that respondent had been fired from her job and had not provided written documentation of new employment. Respondent missed four substance abuse treatment sessions at Catholic Charities and had to be told to reschedule the missed appointments. Respondent had obtained housing with utilities, appliances, and a room for the child. The caseworker said that there were concerns that the father was not spending enough time with the child, but after a family team meeting the father agreed to play a more active role in the child's life and to be with her every weekend to continue the bond between them. The trial court declined make a goal change and continued the child as a temporary ward of the court placed in the care of her father under the supervision of the DHHS. The court ordered respondent to comply with, and benefit from, the case service plan.

The caseworker testified at the next dispositional review/permanency planning hearing on October 29, 2018, that since the last review hearing respondent decided that she would not have contact with the caseworker or participate in drug screen unless her attorney was present. The caseworker told respondent that she could bring her attorney. Respondent had not been drug screened since the week before the July 30, 2018 hearing, and had no contact with the caseworker outside of her supervised parenting time. Respondent's attorney said that respondent had been attending her substance abuse treatment appointments regularly until she had insurance issues, and that she had obtained Medicaid and would resume her treatment. The trial court ordered that the goal remain reunification.

At the next dispositional review/permanency planning hearing on February 26, 2019, the DHHS again recommended that the goal be changed from reunification to termination of respondent's parental rights. Respondent tested positive for amphetamines and THC on July 28, 2018, October 29, 2018, and December 4, 2018. The caseworker testified that respondent agreed on December 5, 2018, to arrange for inpatient substance abuse treatment the week after Christmas, but respondent did not return phone calls to the caseworker and did not set up the appointment. On January 18, 2018, respondent reported to the DHHS that she was going into a residential rehabilitation facility in Traverse City, but she did not provide any confirmation and did not sign a release for the DHHS to obtain information. Counsel for the DHHS expressed skepticism that respondent was "heading herself into a residential rehab facility" on a scheduled review hearing date. The caseworker testified that respondent had been told not to associate with her current boyfriend, a known drug dealer, but an investigation revealed that respondent was "basically living in her boyfriend's home and has been lying to CPS about it." Respondent had her own apartment, but did not have employment. The child was doing well in placement with her father. After the hearing, the trial court declined to change the goal from reunification to termination, but told the DHHS that it could file a termination petition.

Respondent did not appear at the next dispositional review/permanency planning hearing on May 23, 2019. For the third time, the DHHS requested that the goal change to termination because respondent was not participating in services and had had little to no contact with the DHHS "for some time," and when she did have contact she expressed "zero desire to get reunified with this child," who was doing well in her placement with her father. Respondent's counsel acknowledged that respondent "hasn't been here for a while" and that "we have a mom that is not doing well intentionally." He acknowledged that respondent "is not doing anything. She probably

deserves the termination." Respondent's counsel maintained that respondent should not be "let off the hook" for support, and that the child's rights to Social Security benefits should respondent die should not be cut off by the filing of a termination petition. Instead, he argued, the case should be in family court and respondent "should have exclusive physical and legal custody." The guardian ad litem disagreed with respondent's counsel's argument and believed that the filing of a termination petition was in the child's best interests. The guardian ad litem said that respondent continuously assured the child that she would do what she needed to do to regain care of the child and that the child knew that respondent was lying to her and it "upsets her terribly." The guardian ad litem said that the child had a good solid home life with her father and that she did well with her aunt and her cousins.

After the hearing, the trial court said that respondent's counsel's argument was "persuasive and logical," but that even if the court did receive a custody order that gave the child's father sole legal and physical custody it would not automatically dismiss the neglect petition. The court stated:

> It's not so much because of the nonfeasance but the malfeasance. I mean, if it were merely abandonment then one could say, well, yeah. And the, you know, not only that there's case law out there that says, you know, a never ending custody order with no parenting time is a de facto termination and—and then you run into that obligation. And—that obligation isn't frightening when it's just an absent parent. Because you can put control in place for safety. But when it is a—a—an absent parent who is more perhaps involuntarily committed to substance abuse, then the child then—then I don't think that is appropriate.

The trial court entered an order on May 23, 2019, authorizing the DHHS to initiate proceedings to terminate respondent's parental rights. The court did not order the suspension of services but noted that respondent had the obligation to reach out for services.

On the same day, the DHHS filed a supplemental petition requesting that the trial court terminate respondent's parental rights. The supplemental petition stated that respondent was noncompliant in adhering to the provisions of her case service plan. With regard to the plan requirement of finding and maintaining employment, the supplemental petition stated that respondent was fired from her factory job and her cider mill job, that she failed to provide the DHHS with any check stubs or verification of employment, and that she had failed to obtain employment that would allow her to support the child.

With regard to the plan requirement of submitting to a substance abuse assessment and following its recommendations, the supplemental petition stated that respondent completed a substance abuse assessment and participated in several months of outpatient substance abuse treatment at Catholic Charities, but stopped participating with substance abuse treatment in September 2018, allegedly because of an "insurance issue." The supplemental petition also stated that respondent testified positive for drugs on multiple occasions, including amphetamines, methamphetamines, and THC, on 11 occasions between October 20, 2017 and December 4, 2018. She tested positive for THC on three dates during the same time frame, and tested positive for amphetamines, methamphetamines, THC, and cocaine on January 2, 2019.

The supplemental petition further detailed respondent's failure to maintain consistent and open communication with the DHHS. Respondent was to meet with the DHHS outside of her supervised parenting time to submit to random drug screens and participate in family team meetings, but respondent had never completed a random drug screen and had participated in just two family team meetings within the last year. Respondent last participated in a family team meeting in December 2018, and at that time respondent admitted that she had drug addiction problems and agreed that she needed to participate in inpatient substance abuse rehabilitation. Respondent said that she would admit herself to drug rehabilitation after Christmas but never provided any documentation of treatment. The supplemental petition also alleged that respondent had deserted the child by not answering the DHHS's multiple attempts to contact her since February 20, 2019, and by not verifying her whereabouts to the DHHS since February 20, 2019. The supplemental petition requested the court to find that the child was without proper care and custody, to find that the home or environment was an unfit place for the child to live, and to terminate respondent's parental rights and allow the child to remain a temporary court ward placed under DHHS supervision under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (g), and (j).

On July 23, 2019, the trial court held a hearing on the supplemental petition. Respondent did not appear at the hearing. At the conclusion of the hearing, the court found by clear and convincing evidence that the statutory grounds for termination were established. The trial court further found by a preponderance of the evidence that it was in the best interests of the child that respondent's parental rights be terminated. An order terminating respondent's parental rights to the minor child was entered on July 23, 2019. This appeal followed.

## II. REQUEST TO OVERRULE *IN RE MARIN*

Respondent first argues that the trial court lacked authority to terminate her parental rights because the plain language of MCL 712A.19b(1) bars a termination hearing when the child is living with a parent. Although respondent failed to preserve this argument below, this Court may exercise its discretion to review this unpreserved issue because it "involves a question of law and the facts necessary for its resolution have been presented[.]" In *re Medina*, 317 Mich App 219, 228; 894 NW2d 653 (2016) (quotation marks and citation omitted; alteration in original).

Respondent argues that, in *In re Marin*, 198 Mich App 560, 568; 499 NW2d 400 (1993), this Court chose to ignore the plain language of the statute and affirmed the termination of the father's parental rights even though the child was neither in foster care nor in the custody of a guardian and the termination was not filed at the initial dispositional hearing. Respondent urges this Court to convene a special panel under MCL 7.215(J)(3) to overrule *Marin* and restore the plain language of the statute.

This Court addressed a similar argument in *Medina*, 317 Mich App at 233-235, and concluded that the reasoning in *Marin* remained sound. This Court is bound, under the doctrine of stare decisis, by the rule of law established in opinions published by the Court of Appeals on or after November 1, 1990. *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004); MCR 7.215(C)(2). The panel in *Medina* addressed the identical issue raised by respondent in this matter and found the reasoning of *Marin* legally sound in a published opinion issued after November 1, 1990. Thus, this Court is bound to follow *Medina*. *Id*. Accordingly, we conclude that respondent's argument that the trial court did not have authority to terminate her

rights under MCL 712A.19b(1) because the child was placed with her father and not in foster care, and because termination was not sought at the initial dispositional hearing, is without merit.

Respondent, citing MCL 712A.19b(4), attempts to draw a distinction between the facts of *Medina* and the facts of the instant case because in *Medina*, the DHHS sought termination at the initial dispositional hearing, but here the DHHS filed a supplemental petition to terminate respondent's parental rights. While that is true, it is a distinction without consequence. The interpretation of MCL 712A.19b(1) adopted by *Marin* and affirmed in *Medina* states that § 19b(1) " 'impose[s] an obligation upon the probate court to conduct a termination hearing upon request by a party where a child remains in foster care' " in order to avoid " 'delays in the permanent placement of a child in foster care[.]' " *Medina*, 317 Mich App at 231-232, quoting *Marin*, 198 Mich App at 564, 568. *Medina* also held that on the basis of its interpretation of MCL 712A.19b(1), and the fact that "unlike § 19b(1), § 19b(4) does not mention foster care or guardianship," MCL 712A.19b(4) simply "empowers trial courts to entertain a termination petition at the initial dispositional hearing regardless of whether the minor child is placed in foster care or with a guardian" in cases where the goal is termination and not reunification. *Medina*, 317 Mich App at 234-235. Here, the initial goal was reunification, not termination, and, therefore, the MCL 712A.19b(4) exception respondent references is irrelevant in this case.

### III. RESPONDENT'S CONSTITUTIONAL RIGHTS TO THE CARE, CUSTODY, AND CONTROL OF HER CHILD

Next, respondent raises two arguments relating to her constitutional rights to the care, custody, and control of her minor child. We do not find either argument has merit.

First, respondent argues that this Court's ruling in *Marin* violates her constitutional right to the care, custody, and control of her child when a less restrictive alternative was available to accomplish the state's legitimate interest in protecting the moral, emotional, mental, and physical welfare of the child—that is, giving the child's father sole physical and legal custody in an action under the Child Custody Act. This unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights. *In re TK*, 306 Mich 698, 703; 859 NW2d 208 (2014). "To avoid forfeiture under the plain error rule, three requirements musts be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, (3) and the error must have affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted).

Parents have a fundamental right to "make decisions concerning the care, custody, and control of their children." *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). This right is not absolute, however. *Id*. The "state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some circumstances neglectful parents may be separated from their children." *Id*. at 409-410 (quotation marks and citation omitted). Before parents are deprived "of the right to direct the care, custody, and control of their children," they have "the right to an adjudication," *Sanders*, 495 Mich at 418, and parents are "constitutionally entitled to a hearing on their fitness before their children are removed from their custody," *id*. at 412 (quotation marks and citation omitted).

However, once a court assumes jurisdiction over a child, the state's interest in protecting the child prevails over the parent's constitutional rights. *Id.* at 406, 409-410. Thus, after the trial court held a hearing and assumed jurisdiction over the child, the state's interest in protecting the child prevailed over respondent's rights. Further, "[o]nce the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established under subsection [MCL 712A.]19b(3), the liberty interest of the parent no longer includes the right to custody and control of the children." *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000). When respondent suggested that the child should be placed solely in her father's care, she effectively conceded that she was not willing or able to care for the child. Indeed, respondent does not challenge the trial court's finding that the statutory grounds for termination were established by clear and convincing evidence. Respondent's constitutional rights with respect to the child were not violated, and there was no plain error.

Respondent next argues that this Court's interpretation of MCL 712A.l9b(1) in *Marin*, that the state may bring a petition for termination of parental rights against a parent whose child is living with the other parent, violates the Equal Protection Clauses of the Michigan and United States Constitutions because he or she is treated differently than a parent in a custody dispute under the Child Custody Act who is not the subject of a petition for permanent custody. Again, this claim of constitutional error is unpreserved, and thus is reviewed for plain error. *TK*, 306 Mich at 703.

The United States and Michigan Constitutions guarantee equal protection of the law. US Const, Am XIV; Const 1963, art 1, § 2; *People v Pitts*, 222 Mich App 260, 272; 564 NW2d 93 (1997). Both constitutions provide similar protections. *Id.* Generally, equal protection requires that persons in similar circumstances be treated similarly. *Id.* Here, MCL 712A.19b(1) applies equally to any parent who is the subject of a termination petition. Respondent cannot compare her situation to a parent who is not subject to a termination petition because she is not similarly situated with that parent. The fact that a termination petition was filed against respondent sets her apart from a parent who has not had a termination petition filed against him or her. Therefore, respondent's equal protection argument is without merit.

IV. BEST INTERESTS DETERMINATION

Finally, respondent argues that the trial court's failure to obtain the child's view of the permanency plan prevented the trial court from properly considering the child's best interests. This Court reviews this unpreserved claim for plain error. *VanDalen*, 293 Mich App at 135. This Court reviews a trial court's determination regarding best interests for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A trial court's decision is clearly erroneous '[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

"The trial court should weigh all the evidence available to determine the children's best interests." *White*, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "In deciding whether termination is in the child's best interests, the court may consider

the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

Respondent asserts that the trial court erred by determining that termination of respondent's parental rights was in the child's best interests because the court failed to take the child's wishes into account as required by MCL 712A.19a(3), and failed to consider less restrictive alternatives to termination, such as a custody order giving the child's father full physical and legal custody. We disagree.

MCL 712A.19a governs permanency planning hearings. MCL 712A.19a(3) provides, in part, that "the court shall obtain the child's views regarding the permanency plan in a manner that is appropriate to the child's age." Procedural defects do not require reversal of a termination order in all circumstances, especially where the applicable court rule or applicable statute provides no sanctions for violations. *In re Utrera*, 281 Mich App 1, 13; 761 NW2d 253 (2008). Procedural defects, standing alone, do not require that a termination order be set aside. *Id*. at 14.

Here, respondent has failed to prove that any procedural error affected her substantial rights. Although there is no indication on the record that the trial court obtained the child's views at a permanency planning hearing as required by MCL 712A.19a(3), the record shows that the trial court was aware through testimony at the dispositional review/permanency planning hearings that the child had essentially assumed the role of the parent when she was with respondent by taking care of respondent's needs when respondent was sick in bed and sleeping all the time, apparently because of substance abuse. The court was aware that the child knew that respondent was not to have unsupervised contact with her when the child reported that respondent attempted to talk to her during events that respondent was allowed to attend. The court was aware through the guardian ad litem that the child knew that respondent was not doing what she promised she would do in order to have the child returned to her care and that the child would become terribly upset when respondent would make promises and tell the child that she was going home with respondent. The court was also aware that the child was thriving in her father's care. The court also found on the record at the termination hearing that there was "no indication that respondent is able to parent let alone co-parent" and that the child needed stable emotional support, permanency, and security. Respondent had made no progress in overcoming her substance abuse issues and had not demonstrated an ability to maintain employment. She had not visited with the child in seven months at the time of the termination hearing. The court found that the child was most secure in the care of her father and would find permanence if respondent's parental rights were terminated. Even if the child had expressed a wish that respondent's parental rights not be terminated, the statute does not provide that the child's preference override his or her best interests. Thus, any procedural defect in the trial court's failure to obtain the child's views on the permanency plan do not require that the termination order be set aside because the trial court did not clearly err by finding that termination was in the child's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
