*In re* MARIN

Docket No. 149986. Submitted January 6, 1993, at Grand Rapids. Decided March 2, 1993, at 9:30 A.M. Leave to appeal denied, 442 Mich 921.

> The parental rights of Efrain Marin in Veronica Marin, a minor not in foster care, were terminated pursuant to MCL 712A.19b; MSA 27.3178(598.19b) by the Allegan County Probate Court, George A. Grieg, J., after petition by the Department of Social Services. The respondent appealed, claiming that § 19b(1) requires that a child be in foster care before parental rights can be terminated.
>
> The Court of Appeals *held:*
>
> 1. Section 19b(1) provides that, if a child remains in foster care in the temporary custody of the court following a review hearing under § 19(3) or a permanency planning hearing under § 19a, or if a child remains in the custody of a guardian or limited guardian, upon petition of the prosecuting attorney, child, guardian, custodian, or agency, the court is to hold a hearing to determine if the parental rights in the child should be terminated, and if all parental rights in the child are terminated, whether the child should be placed in permanent custody of the court. Section 19b(1), in requiring a probate court to hold a termination hearing upon the filing of a petition relating to a child in foster care, does not otherwise limit the court's authority to conduct a hearing within its discretion with respect to a termination petition relating to a child not in foster care. Thus, as in this case, the rights of one parent may be terminated without the termination of the rights of the other parent, and it is not necessary that the child be in foster care in order for the termination petition to be considered by the court.
>
> 2. The probate court did not err in concluding that the facts in this case supported the termination of the respondent's parental rights.
>
> Affirmed.

REFERENCES

Am Jur 2d, Parent and Child §§ 34, 35.
See ALR Index under Termination of Parental Rights.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — STATUTES.
    The statutory provision that requires a probate court to conduct a
        hearing with regard to a petition for the termination of the
        rights of a parent of a child in foster care does not otherwise
        limit the authority of the court to conduct a hearing within its
        discretion with respect to a termination petition relating to a
        child not in foster care (MCL 712A.19b[1]; MSA
        27.3178[598.19b][1]).

*Andrew J. Marks,* Prosecuting Attorney, and
*Karen Ross Hammond,* Assistant Prosecuting Attorney, for the petitioner.

*Rodger I. Sweeting,* for the respondent.

Before: SAWYER, P.J., and HOOD and JANSEN, JJ.

PER CURIAM. Respondent father appeals from an
order of the probate court terminating his parental rights to his minor child on the basis of his
abuse of that child. We affirm.

Respondent first argues that the probate court
improperly terminated his parental rights because
the child was not in foster care at the time of the
termination hearing.[1] Respondent argues that the
statute only authorizes the termination of parental
rights where a child remains in foster care. While
respondent's argument is not without some merit,
after careful analysis of the statute, we are convinced that the trial court could terminate respondent's parental rights even though the child was
not in foster care.

At issue is the application of MCL 712A.19b(1);
MSA 27.3178(598.19b)(1), which provides as follows:

---

[1] Actually, respondent inaccurately frames the issue as being
whether the probate court erred in finding it had jurisdiction. Respondent's argument, however, does not concern whether the court possessed jurisdiction, but whether the statutory grounds for termination
had been met.

Except as provided in subsection (4), if a child remains in foster care in the temporary custody of the court following a review hearing under section 19(3) of this chapter or a permanency planning hearing under section 19a of this chapter or if a child remains in the custody of a guardian or limited guardian, upon petition of the prosecuting attorney, child, guardian, custodian, or agency, the court shall hold a hearing to determine if the parental rights to a child should be terminated and, if all parental rights to the child are terminated, the child placed in permanent custody of the court.

Read by itself, this subsection could reasonably be interpreted as providing for the termination of parental rights only in circumstances where a child remains in foster care, particularly in light of the fact that nowhere else in this section does the statute address under what other circumstances a petition for termination of parental rights may be filed. Rather, the remainder of this section addresses the circumstances that justify the termination of parental rights, as well as certain other procedural matters.

The petitioner argues that subsection 1 may be read independently of the remainder of the section, suggesting that respondent's argument would have been stronger under the version of the statute that existed before amendment in 1988.[2] Indeed, the argument that a child had to remain in foster care in order for the court to terminate parental rights was much stronger under the pre-1988 version of the statute inasmuch as the prior version of the statute, MCL 712A.19a; MSA 27.3178(598.19a), was structured significantly differently, with an introductory paragraph with language similar to that currently found in § 19b(1)

[2] The statute was substantially amended by 1988 PA 224.

referring to situations where a child remains in foster care, and then having a list of the circumstances that justify termination. We agree that respondent's position would be stronger under the preamendment version of the statute, though we do caution that our analysis of the current statute is not solely based upon the rearrangement of the statute by the Legislature during the 1988 amendment.

While the method by which the Legislature arranges the form of a statute, particularly where the format is changed from a prior version, may be relevant in interpreting the intent of the Legislature in drafting that statute, we must take care not to confuse style with substance. That is, a particular format may be chosen by drafters for purposes of clarity of form, rather than to create a substantive meaning. Similarly, when dealing with an amendment of a statute that revises the structural form of the legislation, a change in format may signal an intent by the drafters to change meaning, or to clarify a meaning that may have been misinterpreted because of the former style of drafting involved, but may also merely reflect a desire to clarify a statute without a change in meaning.[3]

Nevertheless, we are satisfied that the petitioner's interpretation of the meaning of § 19b(1) is correct. The real question to be answered is what purpose is served by § 19b(1): (1) to establish those conditions, and only those conditions, under which the probate court may terminate parental rights

---

[3] Comparing modern statutes with those drafted in decades gone by does indicate a clearer and crisper style of drafting, including the inclusion of multiple paragraphs and subsections in contrast to older statutes that frequently were drafted without the use of subsections, paragraphs, subparagraphs, or even separate sentences. Yet, while the modern statute may have a significantly different form and structure, the meaning might well be the same, the form merely being more conducive to conveying that meaning.

(i.e., when children remain in foster care) or (2) to impose an obligation upon the probate court to conduct a termination hearing upon request by a party where a child remains in foster care. While either of these interpretations would be reasonable in light of the language employed in § 19b(1), we are persuaded that the second interpretation is the one intended by the Legislature.

The primary goal of interpreting a statute is to give effect to the Legislature's intent in drafting the statute. *People v Hawkins,* 181 Mich App 393, 396; 448 NW2d 858 (1989); *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). Statutory language should be construed reasonably, keeping in mind the objective and purpose of the act. *Id.* Furthermore, nothing will be read into a statute that is not within the manifest intent of the Legislature as gathered from the act itself. *Jefferson Schools v Detroit Edison Co,* 154 Mich App 390, 393; 397 NW2d 320 (1986).

Turning to § 19b(1), there are reasons to support respondent's interpretation of the statute. According to the legislative analysis prepared by the House Legislative Analysis Section in the Senate Fiscal Agency,[4] the bills that ultimately were enacted as 1988 PA 224 were introduced to address the problem identified by a commission appointed in late 1982 by Justice MARY S. COLEMAN to address the problems in the juvenile justice and child welfare system that led to abused and neglected children drifting within the system rather than being placed in permanent and loving homes. In the arguments identified in support of the bill,

---

[4] House Legislative Analysis Section, HB 4641, 4642, 4643, First Analysis, October 29, 1987, Second Analysis, August 8, 1988; Senate Fiscal Agency, Bill Analysis, HB 4641, 4642, 4643, First Analysis, June 2, 1988.

the analyses recognized that the bills would ensure that abused or neglected children spend as little time as possible in institutions or foster care, that there would be a strong emphasis on keeping a child at home whenever possible and, where the child is removed from the home, to return the child to the home as soon as possible, but where an indefinite stay in foster care was at risk, the parents' parental rights could be terminated so that a permanent adoption could be arranged.

It would be reasonable to interpret § 19b(1) as urged by respondent, namely that termination of parental rights may occur only where a child remains in foster care. It can be reasonably argued that there is no need to terminate the parental rights of one parent where the child remains in the care and custody of the other parent and there is no basis for removing the child from the custodial parent's care. While the noncustodial parent may not be a fit parent and may, in fact, as is the case here, pose a threat to the child, those concerns could be addressed through traditional custody and visitation proceedings in the circuit court, as well as, through the criminal justice system, as occurred here. Because the custodial parent remains fit and there is no intent to remove the child from the custodial parent or to terminate the custodial parent's rights, there will be no permanent placement of the child outside the custodial parent's home or placement of the child for adoption. That is, if the purpose of § 19b is to provide for the termination of parental rights so that a child may be permanently placed for adoption, or otherwise, in a fit and loving home, there is no justification for the termination of just one parent's rights because no such placement for adoption would occur, nor would the child be placed outside the other parent's home. Thus, any

arrangements concerning the child can be had without involvement of the probate court or the termination of the noncustodial parent's rights.

While the above does present a reasonable interpretation of § 19b(1), that interpretation is dependent upon an assumption or conclusion that the Legislature did not intend to allow the termination of just one parent's parental rights. In looking to the text of the statute, and considering the legislative analysis, we are not persuaded that that assumption is correct. In § 19b(3), in setting forth the grounds that justify the termination of parental rights, the statute refers to the termination of the rights of "a parent" and in various portions of § 19b(3), the statute repeatedly makes references to "a parent" or "the parent." This use of parent in the singular, rather than consistently referring to "the parents" in the plural, suggests that the Legislature envisioned and intended that the probate court could terminate the parental rights of just one parent.

This interpretation of the statute is further supported by the legislative analysis of the bills that ultimately became 1988 PA 224. In analyzing the provisions of HB 4642, the analysis by the House Legislative Analysis Section, First and Second Analysis, p 2, states that the court could terminate the parental rights "of one or both parents" upon meeting of the statutory grounds. While the legislative analysis does not control the interpretation of statutes, it does support the conclusion that the reference in the statute to a parent in the singular was intentional on the part of the Legislature and reflects the legislative intent that the probate court may terminate the parental rights of one, though not both, parents.

Furthermore, as discussed above, the bills that

resulted in the enactment of 1988 PA 224 were introduced to address the problem of children drifting in the juvenile system without permanent placement, whether that placement be a return to the parental home or the termination of parental rights and the placement for adoption or other permanent placement in a new home. One of the items cited in the "Arguments For" section of the House Legislative Analysis was to implement the Coleman Commission's recommendations. Specifically, that children would spend as little time as possible in institutions or foster care and that the social service agency involved would bring an action to terminate parental rights for children who had remained in foster care after one year and were at risk of remaining in foster care indefinitely so that permanent adoption could be arranged.

When the statute is viewed in the context of providing more efficient handling of neglected children with increased emphasis on providing permanent placement, be it in the parental home or elsewhere, as soon as possible, § 19b(1) now possesses meaning independent of establishing the sole conditions under which termination of parental rights may occur. That is, § 19b(1) is designed not to identify the only circumstance under which parental rights may be terminated (i.e., where a child remains in foster care), but to mandate that the probate court hold a hearing regarding a petition to terminate parental rights where the child remains in foster care. Thus, § 19b(1) is designed to prevent a child from drifting in the juvenile system without permanent placement. That is, the probate court is not permitted to be content with leaving the child in foster care and conducting periodic review hearings with no progress toward returning the child to the parental

home or terminating parental rights and allowing permanent placement.

Rather, § 19b(1) mandates that the probate court hold a termination hearing upon a petition where the child remains in foster care. Thus, delays in the permanent placement of a child in foster care cannot result from the court's unwillingness to conduct a termination hearing, it being obligated to do so upon petition. That does not mean, however, that § 19b(1) otherwise limits the conditions under which a petition to terminate parental rights may be entertained by the court. That is, while the court is obligated to hold a hearing regarding a petition to terminate parental rights where the child remains in foster care, that does not imply that its authority to conduct a hearing within its discretion regarding a petition where the child does not remain in foster care is otherwise limited.

For the above reasons, we conclude that the interpretation of § 19b(1) that is most consistent with the express language of the statute and that gives the greatest meaning to the intent of the Legislature is that advocated by petitioner, namely that the parental rights of one parent may be terminated without the termination of the parental rights of the other parent and it is not necessary that the child be in foster care in order for the termination petition to be entertained.

Respondent's remaining arguments relate to whether the trial court erred in concluding that the facts support termination of his parental rights and, therefore, erred in terminating his parental rights. We have carefully reviewed the record and the briefs of the parties, as well as the trial court's opinion, and we are not persuaded that the trial court erred in terminating respondent's parental rights.

Affirmed.