*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILLIAMS, Minor.

UNPUBLISHED
June 18, 2020
APPROVED FOR
PUBLICATION
July 23, 2020
9:05 a.m.

No. 351081
Genesee Circuit Court
Family Division
LC No. 19-136106-NA

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

RONAYNE KRAUSE, J.

In this interlocutory appeal, respondent mother appeals by right, pursuant to MCR 3.993(A)(1), following the trial court's order continuing the placement of the minor child, LZW, with the Department of Health and Human Services (DHHS). The trial court removed LZW from respondent's care largely based on the prior removal of respondent's other child, who is not at issue in this appeal. We reject respondent's contention that she did not receive adequate notice of the possibility of removal, and respondent fails to articulate how she was prejudiced by the trial court's failure to afford her a greater opportunity to present evidence. However, the trial court erroneously failed to make the factual findings required by law before removing LZW from respondent's care. We therefore reverse the trial court's orders removing LZW from respondent's care and continuing LZW's placement with DHHS, and we remand for further proceedings. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1).

## I. FACTUAL BACKGROUND

On July 21, 2019, police were called to the home of LZW's paternal grandmother due to a report of domestic violence. The child's father was apparently intoxicated and angry that the occupants did not let him inside the house quickly enough when he knocked on the door. LZW's father began yelling and picked up, choked, and shook LZW, who was four years old at the time. Although LZW did not have any marks or bruising, EMS transported her to the hospital out of caution. There is no dispute that respondent was not present for the assault.

-1-

Respondent arrived at the hospital after being notified of the incident. Importantly to this matter, respondent took LZW back to her residence before LZW was formally discharged by medical staff. However, respondent's counsel explained to the trial court that according to respondent, a nurse had seen LZW before they left. Furthermore, respondent had prior negative experiences with that particular hospital involving respondent's other child. Although the nature of those negative experiences is unclear from the record,[1] respondent's counsel found it unsurprising that respondent preferred to take LZW to her primary care physician instead of leaving her at that particular hospital.

The next day, respondent signed a CPS safety plan in which she agreed to take LZW back to the hospital that day. However, on the date of the hearing on August 2, 2019, respondent had not yet taken LZW to the hospital or a doctor, but she had scheduled an appointment for August 5, 2019. The hearing referee found respondent's conduct concerning, but it opted to adjourn the hearing until August 5 and leave LZW in respondent's care in the meantime. At the August 5 hearing, the caseworker confirmed that respondent had taken LZW to her primary care physician earlier that day as scheduled. Petitioner and the GAL did not object to LZW being left with respondent at that point. The referee agreed that respondent fulfilled the requirement imposed upon her to keep LZW in her care, and it ordered that LZW remain with respondent.

At the pretrial hearing on August 20, 2019, the circuit judge took a no contest plea from LZW's father, set a trial date for respondent, and then stated that placement of LZW with respondent would continue. Although not reflected in the transcript of the proceedings, the video recording of that hearing shows that the trial court then called the next case on its docket for that morning, seemingly concluding the matter for the moment. After a 23 second gap not shown in the video, the foster care worker addressed the trial court—respondent's case apparently having been recalled in the meantime. The worker explained that respondent's other, younger child was already in foster care for medical neglect, respondent was in "minimal compliance" in the other child's case, and the worker believed respondent's failure to promptly bring LZW to a doctor showed that LZW should also be placed in foster care. Petitioner concurred with the worker, opining that it would make sense for the children to be together. The guardian ad litem admitted that she had not seen LZW in respondent's home, but was "very familiar with" the other child's file and the allegations regarding LZW, and on that basis also concurred with the worker.

Respondent's counsel pointed out that respondent was not present during LZW's assault and does not live with LZW's father, and, as noted, respondent believed LZW had been seen by a nurse prior to removing her from the hospital. Respondent pointed out that the other child was much younger and "had some significant medical issues at the hospital," whereas LZW was older and was safe with respondent. She asserted that concerns regarding the other child were not a legal basis for removing LZW, and given the differences between the children's situations, not relevant to LZW. Counsel emphasized that respondent had complied with the requirement to take

---

[1] Respondent's counsel explained that, specifically, respondent "had some significant disagreements with that hospital about when parents were there and when parents weren't there and whether things were reported or not."

LZW to a doctor, who determined that "there were no marks, there were no bruises, the child was fine."

The trial court inquired into whether both children could be placed in the same home and the DHHS caseworker responded in the affirmative. The trial court then ruled:

> It's not the fact that there's another child in foster care; it's the fact that very poor judgment was used with this child by removing the child from the hospital prior to the formal process of discharge. And I – I will agree that placement in foster care is appropriate at this point.

The court entered an order placing LZW in foster care and directing reasonable efforts for reunification to continue. This appeal followed.[2]

## II. STANDARDS OF REVIEW

"Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). The interpretation and application of statutes and court rules are also reviewed de novo. *Id*. at 404. This Court reviews a trial court's factual determinations for clear error. *In re La France Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). Clear error requires that the reviewing court be "left with a firm and definite conviction that a mistake has been made." *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002). Even if an error occurred, this Court will not disturb the trial court's order unless it would be "inconsistent with substantial justice" to permit the order to stand. MCR 2.613(A); *In re TC*, 251 Mich App 368, 371; 650 NW2d 698 (2002). To the extent the record is unclear whether respondent properly preserved any particular argument, in light of the interests involved and the lack of any responsive briefing by petitioner or the GAL, we choose to treat respondent's arguments as preserved. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002).

## III. NOTICE

Respondent first argues that the trial court violated her due process rights by failing to provide her with adequate notice of a potential removal, thereby depriving her of a meaningful opportunity to be heard. We disagree.

"It is well established that parents have a significant interest in the companionship, care, custody, and management of their children." *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993). This interest is an element of liberty and protected by due process. *Id.* "[T]his interest persists [even if] they are not model parents and even if they have previously lost temporary

---

[2] Respondent filed a motion for reconsideration, which the trial court apparently denied. Although the lower court register of actions contains entries that might plausibly reflect that denial, and we have no reason to doubt that the trial court denied respondent's motion, the record lacks any direct mention of the outcome of that motion or any order from the trial court resolving that motion.

custody of their child to the State." *In re Rood*, 483 Mich 73, 121; 763 NW2d 587 (2009) (quotations and emphasis omitted). The rights to notice and a hearing are due process rights extended to the parent "when a legal adjustment of this constitutionally protected relationship is made." *Matter of Kozak*, 92 Mich App 579, 582; 285 NW2d 378 (1979).

Respondent essentially argues that no party requested removal until after the pretrial hearing was concluded, and no formal motion for removal was filed; therefore, she did not have a meaningful opportunity to be heard and present a defense. We do not find the lack of those formalities dispositive. Respondent's counsel had already attended two hearings in which the issue of LZW's placement was in dispute. Respondent was aware that investigations were continuing into her fitness as a parent as to both children, as well as the fact that the other child was already in foster care. Although the referee continued LZW's placement at both prior hearings, the transcripts clearly show that LZW's placement was conditional and interim. Thus, respondent was on notice that LZW's placement was subject to ongoing review and reconsideration at any time, including at the pretrial hearing. Indeed, respondent had already argued against removal at the prior hearings, so respondent was not unprepared. Respondent was not deprived of due process because she was not specifically told, in so many words, that a request would be made at the hearing to change LZW's placement.[3]

## IV. RIGHT TO PRESENT EVIDENCE

Respondent next argues that the trial court failed to receive any evidence, swear in any witnesses, or allow for cross-examination of any witnesses as required under MCR 3.965(C)(1). We find that any error was harmless and not a basis for reversal.

MCR 3.965(C)(1) governs pretrial placement and explicitly requires, in relevant part, that:

> the court shall receive evidence, unless waived, to establish that the criteria for placement set forth in subrule 3.965(C)(2) are present. The respondent shall be given an opportunity to cross-examine witnesses, to subpoena witnesses, and to offer proofs to counter the admitted evidence.

At pretrial, no witnesses were sworn, no evidence was offered, and no cross-examination was conducted. As respondent points out, the foster care worker provided substantive facts to the trial court despite not being sworn as a witness. The foster care worker was not cross examined, and the trial court did not take any evidence from respondent. Arguably, respondent was denied a meaningful opportunity to respond and offer proofs as required under MCR 3.965(C)(1).

However, if MCR 3.965(C)(1) was violated, the error was harmless. An error does not require reversal if it was not decisive to the outcome of the case. See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 529; 730 NW2d 481 (2007). Notably, respondent's counsel *also*

---

[3] Respondent relies on two cases from the United States Supreme Court that are distinguishable because in those cases, the responding parties really had not been provided with prior notice. Cf. *Lankford v Idaho*, 500 US 110; 111 S Ct 1723; 114 L Ed 2d 173 (1991); *Sniadach v Family Fin Corp*, 395 US 337; 89 S Ct 1820; 23 L Ed 2d 349 (1969).

provided substantive facts to the trial court (and of course was not sworn as a witness), in particular the fact that when respondent took LZW to the doctor and that the doctor concluded that LZW was "fine." Thus, respondent was provided with essentially the same opportunity as the foster care worker to present information to the court. Even more significantly, none of the facts presented by the foster care worker were disputed, surprising, or in doubt. Respondent argues that she could have submitted records from the doctor, but she does not explain how any such records would have added to the fact that the child was "fine." Indeed, the trial court apparently accepted at face value that LZW was unharmed, focusing instead on respondent's judgment. Respondent makes no offer of proof as to what specific further evidence could have been admitted, or how it could have helped her position.

The only apparent factual dispute was whether LZW had been seen by any medical professional (i.e., a nurse) before respondent removed her. The facts that respondent (1) complied with the requirement of taking LZW to a doctor but (2) did not do so in a timely manner were undisputed and already known to the trial court. Similarly, the trial court was aware of the allegations regarding respondent's other child because that child's removal was included in the petition. Respondent provided no offer of proof or other explanation of what evidence she might have sought to introduce, what questions she might have put to the case worker, or what difference either might have made. Therefore, even if the trial court violated MCR 3.965(C)(1), respondent has failed to articulate how she suffered any prejudice as a result. Because there is nothing in the record or in respondent's brief to suggest that the outcome of the proceeding would have differed, any violation of MCR 3.965(C)(1) was harmless and cannot be a basis for reversal. See MCR 2.613(A); *In re TC*, 251 Mich App at 371.

## V. GROUNDS FOR PRETRIAL REMOVAL

Finally, respondent argues that the trial court failed to establish all the grounds for pretrial removal of LZW under MCL 712A.13a(9) and MCR 3.965(C)(2). We agree.

The trial court ordered placement of LZW into foster care pursuant to MCL 712A.13a(9) and MCR 3.965(C)(2) which both provide as follows:

> The court may order placement of the child into foster care if the court finds all of the following:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

The "preponderance of the evidence" standard applies to "cases where the court is merely assuming jurisdiction over the child and not terminating the parent's rights in that child." *Matter of Martin*, 167 Mich App 715, 725; 423 NW2d 327 (1988). A trial court is generally not obligated to articulate extensive findings regarding every conceivable detail. See *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007), citing MCR 2.517(A)(2). However, where a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review. *Id*.

The record shows that the trial court found continued custody of LZW with respondent to present a substantial risk of harm to the child, pursuant to MCR 3.965(C)(2)(a) and MCL 712A.13a(9)(a); and possibly also pursuant to MCR 3.965(C)(2)(c) and MCL 712A.13a(9)(c). We have some doubts about that finding. Notably, respondent's two children are very differently situated in age and health conditions. The record does not reflect that DHHS had any concerns about medical neglect or any other issues regarding LZW prior to the single instance of premature removal from the hospital. The facts that respondent prematurely removed LZW from the hospital and did not take LZW to a doctor until August 5 were not new facts to the trial court as of the pretrial hearing. Nevertheless, the trial court's finding that respondent displayed poor judgment is certainly supported by the evidence. For purposes of resolving this appeal, we accept that the trial court made minimal but adequate findings that custody of LZW with respondent presented a substantial risk of harm to LZW, and continuing LZW's residency with respondent was contrary to LZW's welfare. MCR 3.965(C)(2)(a), (c); MCL 712A.13a(9)(a), (c).

The trial court erred because it failed to make any findings regarding factors (b) and (d), and its findings, if any, as to (e) are ambiguous and incomplete. The trial court did not appear to consider whether removal of LZW was the only available option to keep LZW safe, nor did it appear to consider whether any efforts had been made to keep LZW in respondent's care. Furthermore, the trial court did not appear to consider whether LZW's removal might be more emotionally traumatic to her than keeping her in respondent's care. Although *not* removing a child from an unfit parent can also be hazardous to the child's health, it is well recognized as public policy that separation of children from parents should be avoided if reasonably feasible. See, e.g., *Matter of Marin*, 198 Mich App 560, 564–565; 499 NW2d 400 (1993); *In re Miller*, 433 Mich 331, 346; 445 NW2d 161 (1989). Furthermore, "the decision to remove a child can substantially affect the balance of the child protective proceedings even when the initial concerns are eventually determined to have been overstated." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 470; 861 NW2d 303 (2014).

The Legislature clearly recognized the gravity of any temporary placement in foster care by requiring courts to consider numerous factors prior to pretrial placement. MCR 3.965(C)(2) and MCL 712A.13a(9) explicitly require the trial court find *all* of the factors prior to removing a child from a parent's care. The trial court did not do so. Furthermore, the trial court did not make any apparent efforts to prevent the need for removal of LZW even though respondent fulfilled the condition the court required to maintain custody. Therefore, the trial court clearly erred, and the

order was "inconsistent with substantial justice," *In re TC*, 251 Mich App at 371, because the trial court ignored the mandates in MCR 3.965(C)(2) and MCL 712A.13a(9).

## VI.  CONCLUSION

Respondent was not deprived of adequate notice prior to LZW's removal, and any violation of respondent's right to engage in cross-examination or to proffer evidence was harmless. However, because the trial court failed to make the factual findings required by law prior to removal, the trial court erred and its order of removal of LZW from respondent's care is reversed. If, after remand, any party again seeks removal of LZW, the trial court must make findings on the record as to *all* of the factors enumerated in MCR 3.965(C)(2) and MCL 712A.13a(9).  In so doing, the trial court may and should consider up-to-date information.  See *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994).

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Jonathan Tukel