*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. A. SCHAUB, Minor.

UNPUBLISHED
November 22, 2022

No. 361164
Isabella Circuit Court
Family Division
LC No. 2021-000007-NA

Before: HOOD, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child, LAS, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide care and custody), (i) (parental rights to sibling terminated due to serious and chronic neglect or abuse), and (j) (reasonable likelihood of harm if child returned to parent's home). We affirm.

## I. BACKGROUND

This case originates from an amended petition filed by petitioner, the Michigan Department of Health and Human Services (MDHHS), seeking the removal of LAS from respondent's care. In late January 2021, respondent gave birth to LAS. MDHHS alleged that, at the hospital, respondent tested positive for marijuana, amphetamines, methamphetamines, and buprenorphine. It also alleged that respondent admitted that she had used various drugs a week before LAS's birth, including marijuana, methamphetamines, and heroin. LAS remained in the hospital under observation for withdrawal symptoms. MDHHS alleged that respondent had a lengthy substance abuse history, and that her parental rights to another child, BM, were previously terminated in mid-June 2020. It also alleged that she had a substantial criminal history, and most of her convictions involved the use of controlled substances. The amended petition also identified LAS's putative father.

In mid-March 2021, respondent entered a plea of admissions to the allegations in the amended petition, most notably, that LAS tested positive at birth for methamphetamines and that respondent's parental rights to BM were previously terminated. The trial court exercised jurisdiction over LAS, who was placed with foster parents. Mary Mast, the foster mother, also

-1-

cared for BM. Mast was in the process of adopting BM and expressed an interest in also adopting LAS.

MDHHS sought termination of respondent's parental rights at the initial dispositional hearing. The trial court held a combined dispositional and termination hearing in late March 2021. The trial court found that the statutory grounds for termination were established, but declined to terminate respondent's parental rights. The court reasoned that it did not make sense to terminate respondent's parental rights when the proceeding related to LAS's father was in its initial stages, and respondent should have the chance to further participate in services.

After the combined initial dispositional and termination hearing, respondent failed to appear at a June 2021 review hearing. And she had not contacted the caseworker between the initial combined hearing and the June 2021 review hearing. Testimony indicated that respondent had not participated in drug screening or counseling, and was discharged from her parenting classes for failure to contact the providers. She also failed to attend a September 2021 dispositional review hearing, and one of the caseworkers, Nathan Schafer, testified that he had not had contact with respondent since June 2021. At the September 2021 hearing, the trial court agreed with MDHHS's recommendation to proceed with termination of respondent's parental rights because of her failure to participate in services.

In late October 2021, MDHHS filed a petition seeking termination of respondent's parental rights. It alleged that respondent had a previous termination, that she had been offered multiple in-person and virtual visits with LAS but failed to attend most of them, and parenting time was suspended in mid-June 2021. MDHHS further alleged that respondent had missed all of her drug screens, failed to participate in parenting classes and visitation, did not have stable living conditions, and provided no documentation indicating she participated in counseling.

The termination hearing lasted three days.[1] Respondent, LAS's father, Mast, Schafer, and Danielle Nelson, who was an employee of MDHHS in Clare County when respondent lost her parental rights to BM in June 2020, testified during the first two days of the hearing. On the third day of the hearing, the trial court terminated respondent's parental rights to LAS. It found that MDHHS had presented clear and convincing evidence supporting the statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (g), (i), and (j). The trial court also found that termination of respondent's parental rights was in LAS's best interests. This appeal followed.

## II. STANDARD OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). This Court reviews a trial court's decision regarding best interests for

---

[1] The first two days of the termination hearing involved testimony from various witnesses and, after the hearing, the parties submitted written closing arguments. At the third hearing, the trial court issued an oral opinion terminating respondent's parental rights but declining the terminate the father's parental rights.

clear error. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (citation omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks, citation, and brackets omitted). "Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *Id*. (quotation marks and citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

Respondent argues that the trial court should not have terminated her parental rights when it did not terminate the rights of LAS's father, and she should have been given additional time to participate in services and improve. As we discern it, respondent essentially argues that termination of her parental rights was not in LAS's best interests. We disagree.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. A court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). Finally, it is well-established that the "parental rights of one parent may be terminated without termination of the parental rights of the other parent . . . ." *In re Marin*, 198 Mich App 560, 568; 499 NW2d 400 (1993).

The trial court discussed at length why it found that termination of respondent's parental rights was in LAS's best interests even though it declined to terminate the father's parental rights. The court noted that MDHHS had requested termination in the original petition with respect to respondent because, unlike the father, respondent's parental rights to an older child were previously terminated. The court explained that it did not to terminate respondent's parental rights at the initial dispositional hearing because it wanted to see whether circumstances had changed and whether respondent would make progress. It also indicated its awareness of the fact that LAS's biological father had expressed an interest in becoming LAS's legal father and participating in reunification services. The court noted, however, that it warned respondent that she had to fully comply with services and make progress in order for LAS to be returned to her care. The court also noted that LAS's father would be entering an inpatient substance abuse program.

The court noted that respondent's parental rights to BM were terminated because of respondent's substance abuse and that a new petition had been filed only seven months later with the same concerns. The court observed that respondent had not participated in any services since LAS's removal. And, she failed to visit LAS despite opportunities to do so. Respondent did not participate in any drug screens. She failed to enroll in an inpatient substance abuse treatment

program, as recommended. Further, respondent did not have stable housing and was incarcerated in Indiana on additional charges involving controlled substances at the time of the termination hearing. The court noted that its earlier decision declining to terminate respondent's parental rights made no difference in respondent's behavior, and that the situation arguably worsened given respondent's incarceration. The court also found that because of respondent's lack of participation in services, it would take at least another year, if not longer, for respondent to sober up and be able to have LAS in her care.

Conversely, the court explained that LAS's father would have been eligible for services earlier, but respondent failed to return an affidavit of parentage to the court for four months after the father signed it. The court also noted that MDHHS did not provide the father with a treatment plan until September 2021, despite having the opportunity to do so for at least two months. The court found that, unlike respondent, the father had not yet been afforded a meaningful opportunity to participate in services.

The trial court did not clearly err in terminating respondent's parental rights to LAS. As the trial court fully explained, respondent's situation was distinguishable from the father's circumstances. Regardless, the fact that the father's parental rights were not terminated is a nonissue. See *In re Marin*, 198 Mich App at 568. The critical question is whether respondent did what she had to do to participate in services and demonstrate improvement. She failed to do so.

Respondent's rights to BM were terminated shortly before LAS's birth. After LAS's birth, MDHHS offered numerous services to respondent, but she failed to engage in them. She failed to visit LAS and never participated in drug screens, despite her substance abuse being a major concern. Respondent admitted that, before her incarceration in Indiana, she did not participate in services and acknowledged that she had not had any face-to-face visits with LAS. She further admitted that she failed to participate in substance abuse treatment in the year before the termination hearing, and that she did not participate in any parenting classes before her incarceration. Schafer testified that respondent was offered drug screens three times per week, but she had not completed a single drug screen out of more than 150 that were required. The record supports the trial court's observation that nothing changed, both after respondent's rights to BM were terminated and after it gave respondent additional time to participate in services after it denied the original request for termination. The trial court also found that LAS was bonded to her foster parents and to her sibling, who lived in the same home, and that the foster parents were meeting all of LAS's needs. Schafer's testimony supported the trial court's findings in this regard. Conversely, the court found there was no bond between LAS and respondent. Given respondent's failure to participate in visitation with LAS, this finding was also supported by the record. In sum, a preponderance of the evidence supports the trial court's finding that termination of respondent's parental rights was in LAS's best interests.

We affirm.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly