*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BEY/DOUGLAS, Minors.

UNPUBLISHED
February 16, 2023

No. 362226
Wayne Circuit Court
Family Division
LC No. 2020-001017-NA

Before: GADOLA, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor children, AD and SB, under MCL 712A.19b(3)(a)(*ii*) (child deserted for 91 or more days), (c)(*i*) (the conditions that led to this adjudication continue to exist),[1] (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if child returned to parent's home). We affirm.

## I. BACKGROUND

In 2017, respondent-mother lived in Las Vegas, Nevada, with her husband, the legal father of AD and SB. At some point in 2017, respondent-mother took the children from Las Vegas, without their father's knowledge or consent, and moved them to Detroit, Michigan. In September 2019, Children's Protective Services (CPS) and the children's paternal great aunt went to respondent-mother's home after allegations of physical neglect related to unsuitable housing. The record is silent on who made the allegations of neglect. Since September 2019, the children have been living with the paternal great aunt.

---

[1] The trial court's order finding statutory grounds to terminate respondent-mother's parental rights cites MCL 712A.19b(3)(c)(*ii*) and (*iii*) as grounds for termination. MCL 712A.19b(c)(*iii*) does not exist. See MCL 712A.19b(c). Based on the record, it appears this was a typographical error and the court meant to cite MCL 712A.19b(3)(c)(*i*). This has no effect on the analysis in this opinion, however, because respondent-mother's argument on appeal focuses solely on the trial court's best-interest analysis.

In October 2020, petitioner, the Michigan Department of Health and Human Services (MDHHS), sought removal of the children from their parents' care. MDHHS's petition alleged that respondent-mother failed to provide a stable home environment for the children, noting that her home "had very little to no food, the utilities had been shut off, the home had no furnishings and [respondent-mother] is facing eviction." The petition also alleged that respondent-mother had untreated mental health issues. With respect to the children's father, MDHHS's petition alleged that he "failed to protect the children from physical neglect by allowing them to live in a residence without utilities and food." MDHHS requested that the trial court take jurisdiction over the children and make them temporary court wards. The trial court authorized the petition and took jurisdiction over the children.

In January 2021, respondent-mother failed to appear for the adjudication.[2] At the adjudication hearing, the trial court found by a preponderance of the evidence that there existed statutory grounds to exercise jurisdiction over the children under MCL 712A.2(b). It ordered respondent-mother to attend parenting classes and all court hearings, maintain contact with MDHHS, and attend the children's medical appointments and supervised visitation with the children. MDHHS personnel attempted to refer respondent-mother to services, but they were unable to refer her to services because her whereabouts were unknown from October 2019 to August 2021.

At a May 2021 combined dispositional-review and permanency-planning hearing, MDHHS asked that the trial court grant the paternal great aunt a guardianship over the children because of respondent-mother's continued absence and the father's inability to care for the children for the foreseeable future. The trial court did not approve the guardianship. Instead, it ordered MDHHS to file a petition to terminate parental rights and changed the children's permanency plan from reunification to adoption.

In August 2021, MDHHS filed a supplemental petition seeking termination of the father's and respondent-mother's parental rights under MCL 712A.19b(3)(a)(ii), (c)(i), (c)(ii), (g), and (j). MDHHS's supplemental petition alleged that respondent-mother had failed to complete court-ordered services, including failing to complete any mental health services, obtain suitable housing or income, and attend any visits with her children. The petition further alleged that respondent-mother abandoned her children because of her failure to visit with or care for them and her failure to maintain contact with MDHHS.

In March 2022, the trial court held two termination hearings. MDHHS presented testimony from Marie Parker, a foster care supervisor, and Charlita Beasley, a foster care worker. Parker and Beasley testified that the court had ordered respondent-mother to have a psychological and psychiatric evaluation, participate in family and individual therapy, obtain suitable housing and income, and attend visits and medical appointments with the children. Parker testified that MDHHS made several attempts to refer respondent-mother for services after the removal of the children. They were, however, unable to make referrals to respondent-mother for these services until February 2022, because her whereabouts were unknown. Parker and Beasley further testified that respondent-mother had not provided any support or visited with the children since they came

---

[2] Respondent-mother did not appear for any hearing until late August 2021.

into MDHHS's care, except for two telephone calls in January 2022. Parker and Beasley's testimony also established that respondent-mother had been living out of state, apparently in Ohio and North Carolina, for the majority of the time the children were in care. Although respondent-mother provided documentation ostensibly showing that she completed parenting classes, she did not provide the documentation until the morning of the hearing, and Beasley did not have the opportunity to verify its authenticity. This was the only required service respondent-mother successfully completed. Respondent-mother argued that termination of her parental rights was improper because MDHHS filed the permanent custody petition less than seven months after the trial court took jurisdiction and, therefore, the petition was premature.

The trial court denied MDHHS's request to terminate the father's parental rights, but granted the request to terminate respondent-mother's parental rights. The father, who is not party to this appeal, came into compliance with his reunification plan following the joint petition. Respondent-mother raised concerns and requested further proceedings to determine the children's best interests as it related to termination of her parental rights. The trial court, therefore, ordered a best-interest clinic review for respondent-mother and scheduled a best-interest hearing.

In May 2022, the trial court held a combined best-interest, dispositional-review, and permanency-planning hearing. Respondent-mother again argued that termination was premature because less than a year had passed since MDHHS filed the permanent custody petition and, therefore, respondent-mother did not have sufficient time to complete the parent-agency agreement. Respondent also argued that the children's placement with their paternal aunt weighed against termination.

After the best-interest hearing, the trial court entered an order terminating respondent-mother's parental rights. It found that it was in the children's best interest to terminate respondent-mother's parental rights, noting that she had limited contact with them since July 2019. The court acknowledged that the children were placed with a relative (the paternal great aunt) and that such a placement could militate against termination. The trial court found, however, that respondent-mother had "uprooted the children from their home in Las Vegas, Nevada[,] with the father, without his knowledge, and moved to Michigan, and then moved on to North Carolina, while the children were left with an aunt." Accordingly, the court found that it was in the children's best interests to terminate respondent-mother's parental rights. This appeal followed.

## II. STANDARD OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). This Court reviews a trial court's decision regarding best interests for clear error. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (citation omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks, citation, and brackets omitted). "Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *Id*. (quotation marks and citation omitted). "Best interests are

-3-

determined on the basis of the preponderance of the evidence." *Id*. (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

Respondent-mother argues that the trial court erroneously terminated her parental rights because the children's placement with a relative weighed against termination, as did the fact that the father's parental rights were not terminated. We disagree.

In termination proceedings, the trial court must weigh all the evidence available to determine the children's best interests. See *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

The court is "required to explicitly address each child's placement with relatives at the time of the termination hearing." *In re Olive/Metts Minors*, 297 Mich App 35, 44; 823 NW2d 144 (2012). A court's failure to address the child's placement with a relative is clear error requiring the best-interests finding to be vacated. *Id*. "Indeed, a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), which expressly establishes that, although grounds allowing the initiation of termination proceedings are present, initiation of termination proceedings is not required when the children are 'being cared for by relatives.' " *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010).

Here, the trial court found that it was in the children's best interest to terminate respondent-mother's parental rights, noting that she had limited contact with them since July 2019. The court explicitly acknowledged that the children were placed with a relative, the paternal great aunt, and that such a placement could militate against termination. The trial court found, however, that respondent-mother had "uprooted the children from their home in Las Vegas, Nevada[,] with the father, without his knowledge, and moved to Michigan, and then moved on to North Carolina, while the children were left with an aunt."

The trial court considered the children's placement with their relative, the paternal great aunt. Despite their placement with a relative, the court found it was in the children's best interests to terminate respondent-mother's parental rights. This finding was not clearly erroneous. The record established that respondent-mother had failed to comply with her service plan throughout this case and did not visit with or contact her children for over two years, except for two telephone calls in January 2022. See *In re White*, 303 Mich App at 713 (noting that the trial court may consider, among other things, a parent's visitation history with their children as well as the parent's compliance with their case service plan). The children also indicated that they did not wish to live with respondent-mother and had not asked about her. See MCL 722.23(3) (providing various best-interest factors for courts to consider, including the reasonable preference of the child); *In re Medina*, 317 Mich App 219, 238-239; 894 NW2d 653 (2016) (quoting the factors in MCL 722.23).

The trial court considered the children's need for permanency, stability, and finality when, in determining the permanent custody plan, it declined to pursue a guardianship with the paternal great aunt because it was not a permanent enough solution. The court's conclusion regarding respondent-mother's inability to care for and provide stability for her children was, therefore, supported by the record. Accordingly, because "the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests," *In re Olive/Metts Minors*, 297 Mich App at 43, the trial court's decision to terminate respondent's parental rights was not clearly erroneous.

Respondent-mother also argues that the trial court erred in terminating her parental rights despite declining to terminate the father's parental rights. This Court has routinely held, however, that "the parental rights of one parent may be terminated without the termination of the parental rights of the other parent . . . ." *In re Medina*, 317 Mich App at 232, quoting *In re Marin*, 198 Mich App 560, 568; 499 NW2d 400 (1993). The trial court could, therefore, terminate respondent-mother's parental rights without terminating the father's parental rights.

Finally, respondent-mother argues that the trial court committed clear error when terminating respondent-mother's parental rights because it failed to make separate findings on the best interests of each child. We disagree.

If the best interests of the individual children significantly differ, the trial court should address those differences when making its determination of the children's best interests. *In re White*, 303 Mich App at 715. The trial court does not err, however, if it fails to make explicit findings regarding the best interests of each child where the factual findings would be redundant. *Id*. at 716.

Both children were placed with the paternal great aunt after their removal from respondent-mother's care. The record indicates the children had relatively similar needs as it related to schooling, emotional, and developmental support, and that neither child had any unique medical or health issues. Because the record indicates the needs and situations of the children were largely the same, the trial court did not clearly err by not making separate, redundant, best interest determinations. *In re White*, 303 Mich App at 715-716.

We affirm.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Noah P. Hood