*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BROWN/DAVIS/MINION, Minors.

UNPUBLISHED
April 23, 2026
12:47 PM

No. 376359
Wayne Circuit Court
Family Division
LC No. 2023-002356-NA

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals by right the order terminating her parental rights to her children, LDD, LNM, MAM, QSM, and RTB, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury to the child or a sibling, and there is a reasonable likelihood that the child will be injured if returned to parent's home); MCL 712A.19b(3)(b)(*ii*) (parent had the opportunity to prevent physical injury to the child or a sibling and failed to do so, and there is a reasonable likelihood that the child will be injured if returned to parent's home); MCL 712A.19b(3)(g) (parent failed to provide proper care or custody despite financial ability to do so); MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent); and MCL 712A.19b(3)(k)(*v*) (parent abused the child or a sibling and the abuse included life-threatening injury). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose after respondent's son, SMB, died by a self-inflicted gunshot wound. Respondent kept a loaded and unsecured gun in her apartment. Her children were aware of the gun and its location, and one of the children, SMB, was particularly fascinated with the gun. In December 2023, while the children were left unsupervised in respondent's apartment, SMB climbed onto the furniture and picked up the unsecured gun. While playing with the gun, SMB shot himself in the head and later died. Two of respondent's other children were in the room and witnessed the shooting firsthand, while two others heard the gunshot from neighboring rooms. Responding officers observed that the children were dirty, wore tattered clothes, had matted hair, and smelled like urine. The home was also dirty and littered with garbage.

-1-

The Michigan Department of Health and Human Services (DHHS) petitioned to terminate respondent's parental rights at the initial disposition.[1] The trial court authorized the petition, and respondent pleaded no contest to jurisdiction and statutory grounds for termination at the adjudication as noted above. At the best-interest hearing, the trial court admitted a clinic evaluation, which concluded that respondent had not benefited from the services provided to her and failed to take accountability for the events that led to this case. Accordingly, the trial court determined that respondent would not benefit from additional services and found that it was in the children's best interests to terminate her parental rights. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted).

## III. BEST INTERESTS

Respondent contends that the trial court erred by determining that termination was in her children's best interests. We disagree.

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted).

When determining whether termination is in a child's best interests:

[T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

"Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that

---

[1] The petition also sought to terminate the parental rights of the children's fathers who are not parties to this appeal.

termination is in the child's best interests." *In re Atchley*, 341 Mich App at 347 (quotation marks and citation omitted).

Respondent argues that termination was not in her children's best interests because she was benefitting from various services and was appropriately bonded with the children. Respondent claims there was insufficient evidence to support the trial court's determination that she had not benefited from services, but the clinic evaluation and respondent's foster care worker contended that respondent had not, in fact, benefitted from her services, and further noted that she often refused to take accountability for her actions. The trial court found this evidence credible, and we defer to the trial court's credibility determinations. See *In re Miller*, 347 Mich App 425.

As for respondent's contention that visits "went well with no problems reported[,]" this assertion is belied by the record. The record reflects that respondent was inappropriate at half of the 20 visits she attended—out of the 40 total offered. Moreover, while there is certainly evidence that respondent had a bond with the children, they did not feel safe with her; they did, however, feel safe with their relative placement. Respondent also argues termination was premature, but the case had already been pending for 15 months with no demonstrable improvement from her. Her contention that she was "in at least partial compliance" with her treatment plan does not negate the fact that she nonetheless had failed to benefit from it. Along the same vein, regardless of whether respondent voluntarily sought out additional services or did so to comply with her probation requirements, the record demonstrates that, like the DHHS-provided services, respondent failed to benefit from these services as well. Finally, respondent's argument that the trial court did not give the children's placement with their relative sufficient weight also lacks merit, because the relative placement was against guardianship and wished to adopt the children. In sum, respondent's history with CPS and neglect, failure to benefit from services, and refusal to accept responsibility for her actions, coupled with the fact that the children's relative placement was able and willing to provide them with permanency, stability, and finality, demonstrate that the trial court did not err when it found that termination was in the children's best interests.[2]

Affirmed.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle

---

[2] Respondent also challenges the trial court's decision to terminate her parental rights while choosing to offer a treatment plan and reunification efforts to one of the children's fathers. But trial courts may terminate the parental rights of one parent and not the other, *In re Marin*, 198 Mich App 560, 568; 499 NW2d 400 (1993), and respondent provides no argument as to why the trial court's decision to do so here constitutes reversible error.