*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re LAFRENIERE/HILDEBRANDT/BRUNETTE, Minors.

UNPUBLISHED
April 28, 2022

No. 358351
Delta Circuit Court
Family Division
LC Nos. 20-000532-NA
20-000533-NA
20-000534-NA

In re N. HILDEBRANDT, Minor.

No. 358353
Delta Circuit Court
Family Division
LC No. 20-000533-NA

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother, A. Hildebrandt, appeals as of right the trial court's order terminating her parental rights to her minor children, RL, NH, and SB, and respondent-father, R. Hildebrandt, appeals as of right the order terminating his parental rights to his daughter, NH. The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*) and (j). For the reasons discussed below, we affirm.

## I. STATUTORY GROUNDS

Respondents argue that the trial court erred when it found statutory grounds to terminate their parental rights. We disagree.

To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Powers*, 244 Mich App 111, 117; 624 NW2d 472 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*,

-1-

433 Mich 331, 337; 445 NW2d 161 (1989). After reviewing the record, we are not convinced that the trial court clearly erred.

The court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*) and (j), which provide:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err when it terminated respondents' parental rights under these grounds.

In July 2020, respondents were married and living together in Escanaba, Michigan, with their two-month-old daughter, NH, and respondent-mother's six-year-old son, RL. It appears that respondent-mother's oldest son, SB, who was 12 years old, was then living with his biological father, L. Brunette. RL's legal father, J. Lafreniere, was serving a sentence related to a criminal sexual conduct conviction. All three children have special needs because of various genetic disorders involving chromosomal deletion. RL has the most significant impairments; he is both developmentally delayed and nonverbal.

In July 2020, Children's Protective Services (CPS) received a complaint that respondents were forcing or encouraging RL to smoke marijuana from a pipe. A CPS investigation ensued and a drug screen indicated that RL tested "positive for cannabis/marijuana." Respondents pleaded no contest to allegations that they smoked marijuana in front of the children and made RL smoke marijuana out of a pipe because they thought it would calm him down.[1] After accepting the pleas, the trial court assumed jurisdiction over the children and then ordered respondents to comply with

---

[1] In addition to this child protective proceeding, respondents were criminally charged with fourth-degree child abuse, neglect, and attempted delivery of marijuana to a minor. In March 2021, both respondents entered no-contest pleas to one count of fourth-degree child abuse.

and benefit from a case-service plan. Petitioner offered respondents services designed to address their substance-abuse issues, mental health concerns, housing insecurity, and poor parenting skills. Petitioner also provided respondents with resources to assist them in obtaining employment. Despite these efforts, the evidence established that respondents did not substantially comply with or benefit from the services offered.

The primary barriers to reunification were respondents' mental health issues, related substance abuse, and their poor parenting skills. The caseworker testified that respondents did participate in a psychological evaluation and a substance-abuse assessment, after which the clinicians recommended that respondents participate in therapy to address chronic marijuana use and emotional instability. There is some evidence that respondents enrolled in the recommended therapy, but after that, their cooperation ended. Despite being ordered by the court, respondents refused to execute necessary releases to permit petitioner and the court to review respondents' therapy records and ascertain whether respondents were addressing the relevant issues, establishing goals, and meeting the treatment objectives. At the conclusion of the termination hearing, there was little evidence from which the court could conclude that the issues that led to the adjudication had been appropriately resolved. Indeed, the evidence available to the court convincingly demonstrated that respondents had not adequately addressed their mental health issues or their continued marijuana use.

The caseworker testified that respondents continued to exhibit emotional instability. Respondent-father, in particular, was aggressive, argumentative, and uncooperative. Respondent-mother would frequently follow respondent-father's lead. Neither respondent demonstrated the emotional stability necessary to parent three special-needs children. Further, they consistently tested positive for marijuana nearly the entire time the children were in care. At the outset, the court granted respondents supervised parenting time, contingent on them testing negative for controlled substances. At the time of termination, respondents had not seen their children in approximately seven months because, between January 2021 and August 2021, they consistently tested positive for marijuana. Early on, the court entered an order precluding respondents from using marijuana, even if prescribed or permitted by a medical marijuana card, unless respondents filed a motion and, following a hearing, the court determined that marijuana use was beneficial to reunification efforts and in the children's best interests. Respondents never filed such a motion and there was no evidence that either respondent was using marijuana under the supervision of a medical professional. There was clear and convincing evidence from which the court could conclude that respondents had not adequately addressed their mental health and substance-abuse issues.

Respondents' poor parenting and profound lack of judgment were factors that directly led to the children's removal. Accordingly, improving their parenting skills was an integral component of the treatment plan. In an effort to improve their parenting, petitioner referred respondents to two parenting education classes. Respondents did not qualify for one of the classes because visitation was a prerequisite to participating in the program and respondents' parenting time was suspended because of their continued substance abuse. Petitioner also referred respondents to Pregnancy Services for parenting education. Respondent-father initially participated in some of the online parenting classes through this program, but after a few classes he just stopped participating. Respondent-mother participated in a few more online classes than respondent-father, but she too eventually stopped. There was clear and convincing evidence from

which the court could find that respondents did not substantially comply with this element of their treatment plan. To the extent that they did comply, it is clear that they did not benefit from the services offered. Throughout the case, respondents continued to put their needs ahead of their children's needs. This is evident by the fact that, for approximately seven months, they forfeited the opportunity to spend time with their children because they were unwilling and unmotivated to live a substance-free lifestyle.

In addition to failing to address their emotional instability, drug use, and parenting skills, respondents also failed to obtain suitable housing. At the time of termination, respondent-father was in jail and respondent-mother was living with a friend. Had reunification occurred, respondents planned to live with the children at a campground. They believed that living in this manner would allow them to save money so that, by the fall or winter, they would have accumulated the funds necessary to pay the security deposit and rent on a house. Ignoring the glaring unsuitability of their plans, had respondents taken advantage of the resources provided to them, it would have been unnecessary for them to even contemplate living at a free campground. The caseworker testified that she provided respondents with housing resources and attempted to work with them on a budget so that they could afford suitable housing. Despite these efforts, respondents continued to spend money in ways that did not benefit their family. Perhaps more concerning, respondents indicated to the caseworker that they had no intention of looking for housing until after their related criminal matters were resolved.

The evidence demonstrated that respondents did not substantially comply with their treatment plan and, to the extent that respondents did participate in some services, they did not benefit from them. As a consequence, respondents were in no better position to parent their special-needs children than when the children were removed from their care 13 months earlier.

The record also supports the trial court's finding that there was no reasonable likelihood that respondents would be in a position to safely parent their children within a reasonable time. Respondents refused to cooperate with services. They denied that they had a substance-abuse problem and they were unwilling and unmotivated to lead a substance-free lifestyle for the benefit of their children. The caseworker opined that considering respondents' resistance to treatment, allowing them additional time to work toward reunification would not result in a different outcome.

Termination of parental rights is appropriate under § 19b(3)(c)(*i*) when "the totality of the evidence amply supports" that the parent has not accomplished "any meaningful change in the conditions" that led to the court assuming jurisdiction of the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Further, a parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody and that the child will be harmed if he or she is returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). Applying these well-accepted principles to the existing record, the trial court did not clearly err when it determined that the conditions that led to the adjudication continued to exist and that the children would be a risk of harm in respondents' care. Accordingly, the trial court did not clearly err by finding that the evidence supported grounds for termination under MCL 712A.19b(3)(c)(*i*) and (j).

Notwithstanding this conclusion, respondent-mother asserts that the trial court violated the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq.*, by relying on her marijuana use when terminating her parental rights. We disagree.

The MRTMA provides, in pertinent part:

A person shall not be denied custody of or visitation with a minor for conduct that is permitted by this act, unless the person's behavior is such that it creates an unreasonable danger to the minor that can be clearly articulated and substantiated. [MCL 333.27955(3).]

The plain language of this statute confirms that if a person's use of marijuana creates an unreasonable danger to a minor "that can be clearly articulated and substantiated," the person can be "denied custody of or visitation with a minor." This conclusion is consistent with this Court's consideration of an analogous issue, namely, a parent's alcohol use in child protective proceedings. Although alcohol use is legal for persons over 21 years of age, the abuse of alcohol can be grounds for termination of parental rights. See, e.g., *In re Powers*, 244 Mich App at 119; *In re Conley*, 216 Mich App 41, 43-44; 549 NW2d 353 (1996). The relevant inquiry is whether use of the substance will have a negative effect on a parent's ability to parent, or will cause a risk of harm to the child. *In re Richardson*, 329 Mich App 232, 252; 961 NW2d 499 (2019).

Contrary to respondent-mother's position, respondents' behavior created an unreasonable danger to the minor children. The evidence established that respondents forced a six-year old child with special needs to ingest marijuana because they believed it would calm the child down. Because of this conduct, respondents were convicted of fourth-degree child abuse. It is unlikely that respondents would have abused the child in this manner but for the fact of their own substance use. Put another way, respondents' drug use was directly related to the abuse and neglect. Further, respondents' actions evidenced a profound lack of judgment and exceedingly poor parenting skills. Respondents then did nothing throughout this case to improve their ability to safely parent their children. Indeed, respondents' inability to cease using marijuana reflected an unwillingness to put the needs of the children ahead of their substance use. As a direct consequence of respondents' substance abuse, one child was injured. Moreover, as a consequence of respondents' failure to make any meaningful changes in their lives, respondents have created for RL and his siblings an unreasonable risk of harm in the future should the children be returned to respondents' care. Under the doctrine of anticipatory neglect, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks and citation omitted). Under the circumstances of this case, the fact that marijuana use was permitted by law did not preclude the trial court from considering that use as a factor in the termination of respondents' parental rights.

Unlike respondent-mother, respondent-father does not take issue with the trial court's consideration of his marijuana use. Indeed, he acknowledges that "there were issues with [his] drug use." He further concedes that his conviction of fourth-degree child abuse exacerbated the situation. Instead, respondent-father asserts that termination of his parental rights was premature because he was participating in services. Respondent-father notes that he submitted to a substance-abuse assessment and a psychological evaluation. He also met with a substance-abuse counselor. Respondent-father further contends that he "did not have the ability to work the full case service

plan" because of his status as a registered sex offender and the "unreasonableness" of the plan. Respondent-father contends that he should have been granted additional time to work toward reunification. We disagree.

The record clearly demonstrates that during the 13 months the children were in care, respondent-father was provided several services designed to address the barriers to reunification. Instead of any meaningful engagement in the treatment plan, respondent-father resisted treatment and was argumentative and uncooperative. Respondent-father contends that he was unable to access services because of his status as a convicted sex offender. While it is true that some of the housing resources were unavailable to him because of this status, that was not the reason why respondent-father was unable to find suitable housing for his child. Both respondent-father and respondent-mother refused to make any effort to obtain housing until after they were sentenced on the child abuse charges. Essentially, respondent-father could not be bothered to make any effort because there was a possibility that he might not need the housing sometime in the future. Further, when respondents stated their position, the caseworker then attempted to assist respondents in budgeting and saving for their future housing needs. However, respondent-father did not cooperate in these efforts, and instead, spent financial resources in a way that would not benefit his family. Respondent-father's failure to benefit from the treatment plan was solely a circumstance of his own making. Respondent-father was simply unwilling to put his child's needs ahead of his own desires. The court did not clearly err when it refused to allow respondent-father additional time to work toward reunification.

## II. BEST INTERESTS

Respondents also challenge the trial court's finding that termination of their parental rights was in the children's best interests. We find no error in this regard.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id*. at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

The trial court did not clearly err when it found that termination of respondents' parental rights was in the children's best interests. The trial court correctly observed that the three children were not similarly situated, and therefore, their best interests needed to be considered individually.

SB was placed with his legal father. RL and NH were placed together in a nonrelative licensed foster home, but RL's father was working toward reunification and petitioner hoped to place RL with his legal father soon. The foster parents had expressed an interest in adopting NH. Although the trial court correctly noted that the three children were not similarly situated and that their best interests needed to be considered individually, there were common elements pertinent to evaluating their best interests.

All three children suffered from genetic conditions involving chromosomal deletion. Both RL and SB exhibited developmental delays and required specialized services, including speech and occupational therapy. Both had individualized learning plans to assist in their educational needs. NH was tested and found to have a chromosomal deletion, but different than that of her brothers. Because she was an infant when the children came into care, it was too early to know how her genetic condition would express itself. Consequently, NH's prognosis was uncertain. What was not uncertain was respondents' inability to meet their children's special needs. Respondents did not benefit from services and they both lacked suitable housing. While the children were in care, neither respondent-mother nor respondent-father were able to achieve stability in their own lives, without the added responsibility of caring for their children. Ample evidence demonstrated that they lacked the stability to provide a safe environment for their children's special needs. By contrast, the testimony established that all three children were with caregivers who were meeting their needs and willing to provide them with the permanency and stability they required.

Regarding NH, in particular, she was two months old when she was removed from respondents' care. The only home she had ever truly known was provided by her foster parents, who had expressed a willingness to adopt her. A court may consider the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App at 42. In this case, NH's placement in a pre-adoptive home weighed in favor of terminating respondents' parental rights.

Respondents assert that termination of their parental rights was not in the children's best interests because a parent-child bond existed. However, there was no reliable evidence of a healthy parent-child bond between respondents and their respective children. Indeed, evidence demonstrated that because of respondents' own defiant conduct, any bond that may have existed was significantly weakened, if not severed. Respondents had not visited their children during the seven months that preceded the termination hearing because they could not pass a drug screen. Respondent-father contends that he was precluded from seeing his child because of this unreasonable condition of the case-service plan. However, respondent-father was not denied parenting time because of an unreasonable condition imposed by the court, but because he was unwilling to put his children's interests ahead of his substance use. In any event, a parent's bond with a child is just one factor for a court to consider in its best-interest analysis and, in this case, whatever bond existed between respondents and their children did not outweigh the children's need for a safe and stable home environment.

Respondent-mother argues that termination of her parental rights to her sons was improper because SB was placed with his biological father and RL was soon to be placed with his father. She argues that these placements mitigated in favor of preserving her parental rights. While respondent-mother is correct that a child's placement with a relative weighs against termination, MCL 712A.19a(8)(a), the boys' biological fathers are not "relatives" as defined under

-7-

MCL 712A.13a(1)(j). Accordingly, the trial court was not required to weigh the children's placement with their fathers against termination. See *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016). The trial court did not err by concluding that this factor should not be weighed when determining the boys' best interests.

In a similar vein, respondent-mother argues that because her sons are in, or soon will be in, the stable custody of their legal fathers, terminating her parental rights would do nothing toward ensuring permanency and stability for the boys. Respondent-mother provides little analysis and has neglected to provide any relevant legal authority for this argument. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position." *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (quotation marks an citation omitted). In any event, this Court rejected a similar argument in *In re Marin*, 198 Mich App 560, 565-567; 499 NW2d 400 (1993). In that case, this Court acknowledged, as respondent-mother argues here, that

> [i]t can be reasonably argued that there is no need to terminate the parental rights of one parent where the child remains in the care and custody of the other parent and there is no basis for removing the child from the custodial parent's care. While the noncustodial parent may not be a fit parent and may, in fact, as is the case here, pose a threat to the child, those concerns could be addressed through traditional custody and visitation proceedings in the circuit court, as well as, through the criminal justice system, as occurred here. [*Id*. at 565.]

This Court explicitly rejected this argument, finding instead that "the Legislature envisioned and intended that the probate court could terminate the parental rights of just one parent." *Id*. at 566. Accordingly, the fact that RL and SB would be in the custody of their legal fathers did not preclude termination of respondent-mother's parental rights. Indeed, terminating her parental rights would ensure that she did not have the authority or ability to interfere with the children's stability.

Finally, respondent-mother asserts that it was improper for the court to consider her marijuana use when evaluating the children's best interests. We disagree. As discussed earlier, because respondent-mother's use of marijuana impaired her ability to parent her children, the court properly weighed this factor when considering the children's best interests.

Despite respondents' assertions to the contrary, a preponderance of the evidence demonstrated that termination of their parental rights was in the children's best interests. There was no evidence that respondents could safely parent their children or that they would be able to do so within a reasonable time. Respondents were unwilling to put their children's needs ahead of their own. Further, because of the children's special needs, it was readily apparent that they would be at risk of harm in respondents' care. Termination of respondents' parental rights was

the only avenue by which the children could achieve the permanence, stability, safety, and finality they required.

       Affirmed.

                          /s/ Thomas C. Cameron
                          /s/ Mark J. Cavanagh
                          /s/ Michael F. Gadola