*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BOYAJIAN, Minors.

UNPUBLISHED
March 16, 2023

No. 360551
Oakland Circuit Court
Family Division
LC No. 2021-882820-NA

Before: MURRAY, P.J., and RIORDAN and YATES, JJ.

PER CURIAM.

Respondent-father, G. Boyajian, appeals as of right the termination of his parental rights to MHB, GAB, GMB, and MMB, pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In 2020, respondent and his wife of 20 years, M. Boyajian, lived together with their four children. At the time of the court proceedings, the children ranged in age from approximately 11 to 17 years old. M. Boyajian was the sole wage earner for the family, and respondent was a stay-at-home parent primarily responsible for child care and day-to-day household operations. The family home had four bedrooms. M. Boyajian slept alone in the largest bedroom. The two youngest children, GMB and MMB, shared a bedroom across the hall, and respondent's teenage son, MHB, had his own bedroom. Respondent's oldest daughter, GAB, also had her own bedroom that was furnished with a twin bed. When GAB was approximately 13 years old, respondent began sleeping with her in the twin bed. Initially, this sleeping arrangement began because GAB was afraid of the dark. Later, respondent continued to sleep with GAB because they enjoyed watching television together, after which they would fall asleep in GAB's bed. At some point, respondent continued to sleep with GAB because his snoring bothered his wife. M. Boyajian was employed as a bank executive working in the IT department, and she often worked 12-hour days. After the COVID-19 pandemic, her work days were even longer. M. Boyajian explained that GAB slept "like a log," so she was not concerned that respondent's snoring would keep GAB up.

In the early months of the COVID-19 pandemic, the children's schools offered remote learning. In November 2020, in an effort to assess student well-being, GAB's high school distributed, with parental consent, student wellness surveys. In her survey, GAB indicated that

-1-

she did not feel safe at home and had experienced thoughts of harming herself. The school social worker informed respondent and M. Boyajian of GAB's survey responses. When M. Boyajian questioned GAB about the survey, GAB initially did not disclose anything concerning. Later, however, M. Boyajian again spoke with GAB about the wellness survey. After several hours of a private discussion, GAB disclosed that she was being sexually abused by respondent. The following day, M. Boyajian contacted a religious prayer hotline, spoke with a Christian counselor, and eventually, at the counselor's insistence, contacted Children's Protective Services ("CPS"). CPS allowed the children to remain in the home, in M. Boyajian's care, but a safety plan was put in place that required respondent to leave the family home. M. Boyajian then made arrangements for respondent to stay in a friend's nearby unoccupied house.

GAB later participated in a forensic interview at Care House. While the interview was in progress, M. Boyajian learned that the police had been unable to locate respondent. In light of some earlier statements, M. Boyajian believed that respondent was going to attempt suicide. Local law enforcement discovered respondent hiding under a basement staircase with the barrel of a loaded Glock 19 handgun in his mouth. Over the course of several hours, the situation escalated to the point where respondent was deemed to be a risk to himself and others. The police exited the house and remotely deployed a robot to assess the situation. Shortly thereafter, video transmitted from the robot confirmed that respondent was unconscious on the basement floor. The police re-entered the home and discovered that respondent appeared to have overdosed. Respondent was later arrested and charged with criminal sexual conduct.

In January 2021, petitioner, the Department of Health and Human Services ("DHHS"), filed an original petition seeking termination of respondent's parental rights to his four children. Following a trial in October and December 2021, the trial court found statutory grounds to assume jurisdiction over the children. It also held that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). Following a best-interest hearing in February 2022, the trial court found that termination of respondent's parental rights was in all of the children's best interests. Respondent now appeals.

II. ANALYSIS

A. JURISDICTION

Respondent first argues that the trial court erred when it found statutory grounds to assume jurisdiction over the children. We find no error in this regard.

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). The adjudicative phase determines whether the trial court may exercise jurisdiction over the children. *Id*. To establish jurisdiction, the petitioner must prove by a preponderance of the evidence that a statutory basis exists under MCL 712A.2(b). *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). A "preponderance of the evidence" means evidence of a proposition that, when weighed against the evidence opposed to the proposition, "has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). This Court reviews a trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). To the extent that the jurisdictional

issue presents a question of statutory interpretation, this Court reviews that issue de novo. *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

The trial court exercised jurisdiction over the children under MCL 712A.2(b)(1) and (2), which provide that a court has jurisdiction over a child in the following circumstances:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. As used in this sub-subdivision:

> (A) "Education" means learning based on an organized educational program that is appropriate, given the age, intelligence, ability, and psychological limitations of a juvenile, in the subject areas of reading, spelling, mathematics, science, history, civics, writing, and English grammar.

> (B) "Neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

> (C) "Without proper custody or guardianship" does not mean a parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance.

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

We conclude that the evidence supports the trial court's decision to assume jurisdiction over the children. A preponderance of the evidence established that respondent subjected his children to a substantial risk of harm to their mental well-being and that his home, by reason of cruelty, criminality, and depravity, was unfit for the children to live in.

We reject respondent's argument that the court improperly assumed jurisdiction because GAB was not a credible witness and there was no corroborating evidence to establish that respondent sexually abused her. Respondent presented this argument to the trial court, which found GAB's testimony that respondent sexually abused her to be more credible than respondent's contrary arguments while rejecting the suggestions that GAB fabricated the accusations because she was depressed or because she wanted respondent out of the home. In applying the clear error standard in these cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Resolution of the jurisdictional issue obviously turned on the credibility of the witnesses. The court found GAB's testimony to be highly credible and it made specific findings in support of that conclusion. The court noted that GAB initially did not make eye contact when she began her testimony. However, when the prosecutor encouraged GAB to speak to the judge, GAB maintained eye contact and then firmly and definitely testified regarding the events. The trial court rejected the suggestion that GAB's composure was indicative of fabrication, noting that this could simply be her affect, used as a coping mechanism. The court also found GAB to be forthright and consistent, noting that the child never wavered in her recounting of the events. The court also rejected the suggestion that M. Boyajian and GAB concocted a story to get respondent out of the home, noting that there was no evidence that GAB had a manipulative nature. Furthermore, M. Boyajian's own testimony established that, despite her frustrations with respondent's lack of ambition, she had no intention of separating from respondent. Indeed, after the abuse was disclosed, M. Boyajian filed for divorce, but later withdrew her complaint.

The court also found compelling the details that GAB was able to provide regarding the abuse. Although GAB did not know if respondent ejaculated, she described being "moist" after the assaults. She also described immediately going to the bathroom to scrub her vagina and anus. GAB testified that during and after the sexual assaults, respondent appeared to be sleeping, his eyes were closed, and he did not speak. The court found that this testimony enhanced GAB's credibility, noting that it made sense that a perpetrator, caught in the act, would try to hide it by pretending to be asleep. Ultimately, the court found that GAB's description of the abuse was sufficient and believable. The court acknowledged that some of GAB's testimony did not make sense, but it noted that the family was very traditional and religious and that GAB was likely not sexually sophisticated, so she lacked a base of knowledge to be more descriptive.

Despite respondent's arguments to the contrary, there was additional evidence corroborating GAB's testimony. M. Boyajian testified that respondent, when confronted with the allegations, admitted that on several occasions while sleeping with GAB, he awoke to discover semen in his underwear. She further testified that the two of them discussed the possibility that GAB observed the semen and was confused, contributing to the formulation of the accusations. The trial court reasonably could find that evidence of this nature would be consistent with someone who had sexually abused his child attempting to create a narrative, no matter how implausible, to deflect and defend against the accusations. Thus, rather than vindicate respondent, his own statements lent credence to GAB's account.

The court's assumption of jurisdiction necessarily turned on GAB's credibility. The record demonstrates that the trial court carefully considered all of the evidence before concluding that GAB was believable. Accordingly, the trial court did not clearly err when it found that a preponderance of the evidence supported its assumption of jurisdiction over the children under MCL 712A.2(b)(1) and (b)(2).

We reject respondent's argument that the trial court erred in assuming jurisdiction over the children under MCL 712A.2(b)(1) because, even if the abuse occurred, the children were not left without proper custody or guardianship because they were placed with their biological mother. While MCL 712A.2(b)(1) permits a court to take jurisdiction over a child "who is without proper custody or guardianship," MCL 712A.2(b)(1)(C) further provides that "without proper custody or guardianship" does not mean a "parent has placed the juvenile with another person who is legally

responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance." Respondent argues that MCL 712A.2(b)(1)(C) precludes the assumption of jurisdiction. However, there is no evidence that respondent was a parent who placed his children with another person legally responsible for their care. Further, taking respondent's argument to its logical extreme, the parental rights of an abusive parent could never be terminated if the children are in the custody of the other parent, a proposition that we have previously rejected. *In re Marin*, 198 Mich App 560, 565; 499 NW2d 400 (1993).

## B. STATUTORY GROUNDS FOR TERMINATION

Next, respondent argues that the trial court clearly erred when it found that the statutory grounds for termination of his parental rights were established by clear and convincing evidence.

In order to terminate parental rights, the trial court must find that at least one statutory ground for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich at 337.

The court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*), which provide:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.
>
> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:
>
> * * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

* * *

(*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.

Given this record, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights pursuant to these grounds.

As discussed earlier, the trial court found that GAB credibly testified that she was sexually abused by respondent multiple times and that the abuse included anal and vaginal penetration. The court also rejected respondent's suggestion that GAB fabricated the accusations because she was depressed and wished to get respondent out of the house. These findings are supported by clear and convincing evidence. Furthermore, they are predicated on credibility determinations that we will not disturb. See *In re Miller*, 433 Mich at 337. The evidence, in addition to meeting the evidentiary burden for establishing jurisdiction, also met the higher standard of proof employed when determining whether there existed a statutory ground to terminate parental right. That is, the evidence clearly and convincingly showed that respondent sexually abused one of his children and that this abuse included sexual penetration.

To justify termination of parental rights under § 19b(3)(b)(*i*), not only must there be evidence that the sexual abuse occurred, but the court must also find by clear and convincing evidence that there exists a reasonable likelihood that the children will be harmed if returned to respondent's home. A similar finding is required for purposes of MCL 712A.19b(3)(j), (k)(*ii*), and (k)(*ix*). In this regard, the trial court did not err when it concluded that all of the children, not just GAB, would be at risk of harm if returned to respondent's care. The evidence confirmed that respondent was willing to violate well-accepted legal and moral boundaries between a child and a parent by sexually abusing his daughter, and that respondent lacked the parenting skills necessary to safely parent any child. Accordingly, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*).

## C. BEST INTERESTS

Respondent's final challenge is to the trial court's finding that termination of his parental rights was in the children's best interests.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted), as well as psychological evaluations, the child's age, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the

children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Further, when determining the children's best interests, a trial court must consider each child separately. *In re Olive/Metts*, 297 Mich App at 42. A trial court need not, however, make "individual" and "redundant factual findings" if the children's interests do not significantly differ. *In re White*, 303 Mich App at 715-716. Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

The trial court did not clearly err when it found that termination of respondent's parental rights was in the children's best interests. The court gave the most weight to its finding that respondent had repeatedly sexually abused GAB, making him an extreme risk of harm to all of the children. Respondent's denial of the abuse and evidence that M. Boyajian questioned the veracity of GAB's allegations supports the trial court's conclusion that the children would be at risk of harm in respondent's care. The court did not err when it concluded that keeping the children safe far outweighed any benefit in continuing a relationship with respondent.

Despite respondent's assertion that the existence of a parent-child bond weighed against termination of his parental rights, a preponderance of the evidence established that respondent's actions severed any bond that may have existed with GAB. Further, the testimony established that any bond between respondent and MHB was extremely weak. Accordingly, the record does not establish any significant bond between respondent and his two oldest children.

The parties stipulated that the two youngest children loved and missed respondent, and they did not want his parental rights terminated. However, the court did not find evidence of a bond with these two children particularly compelling, noting that the children were young, and as they matured and learned of the abuse, this bond would likely weaken. This was not improper speculation, as the court's conclusion could reasonably be inferred from the evidence. In any event, while respondent and his youngest children may have a bond, the court's finding that this factor did not outweigh the children's need for a safe home free from sexual abuse was not in error.

Respondent also argues that because MHB would soon reach the age of 18, indeed his 18th birthday was the day following the best-interest hearing, it was unnecessary for the court to terminate his parental rights to this child. We conclude that the trial court did not err in this regard. The trial court reasoned that if it did not terminate respondent's parental rights to all of the children, it would cause further emotional injury to the children and disrupt the sibling bond. It envisioned occasions when one child might learn that a sibling had contact with respondent, which might cause pain and discord between the siblings. As part of its best-interest determination, it is permissible for the court to consider the sibling relationships. See *In re Olive/Metts*, 297 Mich App at 42. Moreover, the court also noted that although MHB was nearly an adult and had not been sexually abused by respondent, he still was emotionally damaged by the events. Terminating respondent's parental rights to MHB would provide this child with the finality he would require to heal and move forward. *Id*. Considering the foregoing, a preponderance of the evidence supported the trial court's finding that termination of respondent's parental rights to MHB, despite that he would soon turn 18, was in all of the children's best interests.

GAB will likely suffer the consequences of the sexual abuse for a lifetime. The other children will have to process that their lives were up-ended and they were under the scrutiny of the court system and DHHS because their sibling was the victim of abuse at respondent's hand. Thus, all of the children were directly or indirectly made victims of respondent's abuse of GAB. See, e.g., *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Accordingly, the trial court did not err when it held that terminating respondent's parental rights was the best avenue by which all of the children could achieve stability, permanence, and finality.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Riordan
/s/ Christopher P. Yates